[Nos. A020434, A022374, A024871. First Dist., Div. Two. June 22, 1987.]

SAMUEL FLORES, Plaintiff and Appellant, v.
NATIVIDAD MEDICAL CENTER et al., Defendants and
Appellants.

[Opinion certified for partial publication.*]

*Pursuant to rules 976 and 976.1, California Rules of Court, the portion of the opinion certified for publication follows.

COUNSEL

Michael G. Briski and Ruocco & Saucedo for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, James R. Schwartz and Carol Slatin Kallai, Deputy Attorneys General, Robert H. Skemp and Grunsky, Pybrum, Skemp, Ebey & Farrar for Defendants and Appellants.

OPINION

KLINE, P. J.—

### INTRODUCTION

In these consolidated appeals, plaintiff Samuel Flores secured a jury verdict of $600,000 special damages and $550,000 general damages against

defendants State of California, Natividad Medical Center, the County of Monterey, and Doctors Meyer, Lilienthal and Hunt. Following the verdict the trial court applied the provisions of the Medical Injury Compensation Reform Act (MICRA) and struck $300,000 from the general damages pursuant to Civil Code section 3333.2 and later granted defendants' motion to provide for periodic payments of the balance of the award. (Code Civ. Proc., § 667.7.)

Plaintiff Flores appeals, contending: (1) that the court exceeded its jurisdiction in applying MICRA to the verdict rendered against the State of California (State) since plaintiff's action against the State was not for malpractice within the meaning of MICRA, but was based solely upon a failure to summon medical care (Gov. Code, § 845.6); (2) that Civil Code section 3333.2, subdivision (b), Business and Professions Code section 6146 and Code of Civil Procedure section 667.7 (MICRA provisions) are unconstitutional as they deny plaintiff equal protection of the laws; and (3) that even if MICRA is constitutional and may be applied to the State, the court erred in modifying the judgment to provide for periodic payments, as the court had no power to modify the judgment entered and because the jury did not designate which portion of its verdict was attributable to future damages.

Defendants State and Doctors Lilienthal and Meyer appeal, contending: (1) that the trial court erred in refusing to instruct the jury on superseding cause in conformity with defendant State's theory of the case; and (2) that the court erred in refusing to instruct the jury on the law pertaining to medical standards in prisons.

### STATEMENT OF THE CASE

Plaintiff sought recovery for personal injuries he sustained while a prisoner at the Correctional Training Facility at Soledad, California. On September 23, 1980, plaintiff filed a complaint captioned "*COMPLAINT FOR DAMAGES* (Failure to Summon Medical AID - Government Code § 845.6, Medical Negligence)" in Monterey County Superior Court against defendants Natividad Medical Center, the County of Monterey, the State of California, Doctors Joseph Hannon, William Hunt and John Christensen (of Natividad Medical Center), and Does I-XX. The first cause of action alleged that defendants "knew or should have known, that plaintiff was in need of immediate medical care and they failed to take reasonable action to provide such care." The first cause of action also alleged that defendants were negligent in their diagnosis and treatment of plaintiff. The second cause of action alleged that defendants Natividad, County of Monterey, and Doctors Hannon, Hunt, Christensen and Does I-V were negligent in their diagnosis and treatment of plaintiff.

The county defendants and Natividad answered the complaint. Defendant State demurred on the grounds that the complaint failed to state a cause of action for failure to summon medical care and that the State was immune from liability for medical malpractice or failure to "provide" adequate medical care. The demurrer was overruled and defendant State subsequently filed its answer. Thereafter, Doctors Meyer and Lilienthal were served as Doe defendants and filed answers.

Defendants Christensen and Hannon were dismissed pursuant to motion of plaintiff at the commencement of trial.

The jury found defendants Meyer, Lilienthal, State of California, Hunt and Natividad negligent, that their negligence proximately caused plaintiff's injury and that plaintiff suffered $600,000 in special damages and $550,000 in general damages. The jury apportioned liability as follows: Dr. Meyer, 40 percent; Dr. Lilienthal, 5 percent, State, 35 percent, Natividad, 5 percent; and Dr. Hunt, 15 percent.

Upon return of the verdict, defendants State, Meyer, Lilienthal and Natividad moved to strike $300,000 in general damages over and above the $250,000 pursuant to Civil Code section 3333.2. Plaintiff again challenged the constitutionality of MICRA. The court, concluding that the statute was constitutional, granted defendants' motion to strike $300,000 from the general damages award and thereafter judgment was entered for plaintiff in the total sum of $850,000. Notices of appeal were filed by plaintiff and by defendants State, Lilienthal, Meyer and Natividad.

The trial court ordered that the judgment be modified to provide for periodic payments.[1]

The parties filed timely notices of appeal, which we consolidated.

STATEMENT OF FACTS

Plaintiff, an inmate incarcerated at the California Training Facility at Soledad, arrived at the Soledad infirmary on December 1, 1979, about 5:40

---

[1] The September 13, 1983, order provides that $611,789.60 distributed in periodic payments, will compensate plaintiff for future damages; that the defendants, as joint and several tortfeasors, shall pay plaintiff's conservator $24,938.04 a year in monthly installments of $2,078.17 on the first day of each month, until the $611,789.60 is distributed (approximately 27 years) or the death of plaintiff, whichever comes first; that the defendants shall pay $50,000 to plaintiff's conservator to be held in trust for plaintiff's emergency needs; that the defendants shall pay to plaintiff $119,832.91 in attorneys' fees and $68,377.49 for costs; that defendants pay $19,425 to the Director of Health Services to satisfy the medical lien plus any other outstanding medical liens in existence at the time the judgment is satisfied.

p.m. complaining of nausea, vomiting and pain in his stomach which had started around 4 p.m. that day. He was admitted for observation and his condition and prognosis were listed as good.

During his 22-hour stay at the infirmary, plaintiff was examined initially by a medical technical assistant (MTA) (a person employed to assist the doctors at the infirmary, whose duties are equivalent to those of a military hospital corpsman, such as taking of vital signs) for about one hour, had his vital signs taken by various MTA's about every two hours, was examined on three occasions by defendant Meyer and on one occasion by defendant Lilienthal, was given medication and intravenous fluids, and had various blood and urine tests.

Defendants Meyer and Lilienthal made an initial diagnosis of renal colic, thought plaintiff sick enough to remain in the infirmary but felt it was not an emergency situation and that plaintiff did not have an acute surgical problem. In fact, plaintiff had an ulcer, which perforated at some point between the onset of his symptoms and 3:25 p.m. the following day.

Expert testimony and other evidence were presented supporting the conclusion that Doctors Meyer and Lilienthal were negligent in their diagnosis and treatment of plaintiff at the Soledad infirmary, that their actions in several instances seriously deviated from the standard of care, and that the delay in transferring plaintiff from the infirmary to the hospital was negligent and a serious deviation from the standard of care.

At 3:20 p.m., on December 2, the MTA was unable to hear plaintiff's blood pressure. Dr. Meyer was summoned, placed plaintiff in a shock position, determined he had suffered a major abdominal catastrophe and was in shock and made arrangements for him to be transferred to Natividad.

Expert testimony established that the delay in treatment and transfer to Natividad was a critical factor. The longer the delay, the sicker the patient and the higher the complication rate. The complications which occurred in plaintiff were secondary to the delay in the handling of his problem and the delay in diagnosis and therapy contributed to the complications he subsequently suffered at Natividad after his surgery.

Plaintiff arrived at the emergency room in Natividad about 4:47 p.m. Although very ill, he was conscious, alert and able to give the emergency room doctors the details of his medical history. Plaintiff was operated on for his perforated ulcer about 7:50 p.m. After the operation, plaintiff was on a ventilator to insure adequate oxygenation. About 11:30 p.m., plaintiff's breathing was not in phase with the ventilator and hospital staff eventually adjusted the ventilator but in the wrong direction. About 4:15 a.m., plaintiff

pulled the endotracheal tube out of his trachea, was able to breathe on his own, and talked to one of the medical residents. The resident attempted to reintubate plaintiff from about 4:15 to 4:55 a.m., despite the fact that he had no formal training in intubation and should instead have called an anesthesiologist or surgeon. About 4:55 a.m., the resident summoned defendant Hunt, a third-year intern. Hunt gave plaintiff Anectine, a drug which paralyzes a person and can cause cardiac arrest, in an attempt to reintubate him. The decision to reintubate plaintiff was below the standard of care. The paralysis induced by the Anectine caused plaintiff to stop breathing and to suffer cardiac arrest. Defendant Hunt thereafter placed the endotracheal tube into plaintiff's esophagus rather than his trachea. Because plaintiff had no ventilation he sustained brain damage.

## DISCUSSION

### I.

*Plaintiff's Appeal*

Plaintiff challenges both the constitutionality of MICRA and its application in this case.

### A.

*MICRA has been held constitutional*

We summarily reject plaintiff's equal protection challenge as the California Supreme Court has determined that the MICRA provisions here challenged satisfy constitutional requirements. (*Roa* v. *Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920 [211 Cal.Rptr. 77, 695 P.2d 164], attorneys' fees limitations of Bus. & Prof. Code, § 6146; *Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137 [211 Cal.Rptr. 368, 695 P.2d 665], limitations on noneconomic damages of Civ. Code, § 3333.2; *American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233], periodic payment provisions of Code Civ. Proc., § 667.7.)

### B.

*Whether MICRA applies to the State's failure to summon medical aid*

Plaintiff challenges the application of MICRA to the State, contending that the act does not extend to actions for failure to summon medical assistance pursuant to Government Code section 845.6.

Civil Code section 3333.2 limits the award of noneconomic damages to $250,000 in malpractice actions. That section provides in relevant part: "(a) In any action for injury against a health care provider based on professional negligence, the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage. [¶] (b) In no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000)." "Health care provider" is defined in section (c)(l) as any person licensed or certified pursuant to specified sections of the Business and Professions Code or the Health and Safety Code "and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 ... of the Health and Safety Code. 'Health care provider' includes the legal representatives of a health care provider ...."

"Professional negligence" is defined in section (c)(2) as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death ...."[2]

Plaintiff contends that his cause of action against the State was not for professional negligence and that neither the State nor the Soledad infirmary constitutes a "health care provider" as defined in MICRA. State defendants (the State and Doctors Lilienthal and Meyer) contend that the action against the State was actually premised on medical malpractice, that MICRA should apply to actions for failure to summon medical aid on these facts, and that plaintiff invited or waived error in any event by failing to contend below that MICRA did not apply to the State.

We have concluded that MICRA does not apply to the cause of action against the State for failure to summon medical aid and that plaintiff did not invite error nor waive it by failing to make this argument below.

Plaintiff sued the State for failure to "provide" care, referencing Government Code section 845.6 in his complaint. Government Code section 845.6 provides in relevant part: "Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to

---

[2]Other provisions of MICRA utilize the same definitions of "health care provider" and "professional negligence" to define the reach of the legislation. (Bus. & Prof. Code, § 6146; Code Civ. Proc., § 667.7.)

summon such medical care. Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice or exonerates the public entity from its obligation to pay any judgment, compromise or settlement that it is required to pay under subdivision (d) of Section 844.6."

Plaintiff responded to the State's demurrer by arguing that his complaint was premised on a failure to summon medical assistance pursuant to section 845.6 and in the alternative on the vicarious liability of the State for the negligence of its doctors. ■ It is clear that the State is not vicariously liable for the medical malpractice of its employees. (*Nelson v. State of California* (1982) 139 Cal.App.3d 72, 78 [188 Cal.Rptr 479].) Although the State is required to pay the judgment assessed against its employees for medical malpractice committed against a prisoner, the State is immune from suit directly. (Gov. Code, § 844.6; *Nelson v. State of California, supra.*)

■ Although plaintiff argued to the jury that the doctors were negligent and liable for malpractice in their treatment of plaintiff and in failing to transfer him to the hospital immediately, he also argued that the State was liable for the doctors' failure to transfer him, such failure being equivalent to a failure-to-summon medical aid under the statute. The case went to the jury on the failure to summon cause of action. Plaintiff's counsel argued that while the State was ordinarily immune for negligence of its doctors, it could be liable for failure to summon medical aid, specifically referring to Government Code section 845.6. Counsel then argued that the doctors could be liable for their professional negligence. Defense counsel for the State and for Natividad also referred in their closing arguments to Government Code section 845.6, and the jury was instructed in the language of this statute. Although unfortunately the special verdict form used the term "negligent" with respect to the State's liability, it is clear that plaintiff's case against the State was in substantial part based on a failure to summon medical aid. As the jury was instructed on this theory we may not assume that its verdict rested upon an improper ground under these circumstances.

■ *Waters v. Bourhis* (1985) 40 Cal.3d 424 [220 Cal.Rptr. 666, 709 P.2d 469] establishes that "when a plaintiff knowingly chooses to proceed on both non-MICRA and MICRA causes of action, and obtains a recovery that may be based on a non-MICRA theory, the limitations of [MICRA] should not apply." (*Id.,* at p. 437, fn. omitted.) In *Waters,* a former client sued the attorney who had represented her in an earlier suit against a psychiatrist, contending that the contingency fee collected by the attorney after settlement of the earlier action exceeded the maximum fee permitted by MICRA. The prior action against the psychiatrist alleged that the psy-

chiatrist had engaged in sexual misconduct with the plaintiff and was based both on professional negligence and intentional tortious conduct. The court recognized that "MICRA's reference to actions based on 'professional negligence' is not strictly limited to classic sponge-in-the-patient medical actions . . . ." (*Id.*, at pp. 432-433, citing *Hedlund v. Superior Court* (1983) 34 Cal.3d 695 [194 Cal.Rptr. 805, 669 P.2d 41, 41 A.L.R.4th 1063].) Nevertheless, the court held that in hybrid actions of this type, where both viable MICRA and non-MICRA theories were pursued and where recovery could have been based on the non-MICRA theory, MICRA limitations would not apply. (*Id.*, at pp. 437-438.)

 Here, not only *could* the State's liability have been premised on a failure-to-summon theory, such theory was the *only* proper basis for recovery against the State.

 We also reject State defendants' contention that MICRA should apply to the failure to summon medical assistance cause of action in the circumstances of this case. Although the failure to summon assistance could have provided a basis for the finding of professional negligence against the doctors, this does not render the true nature of the action against the State one for professional negligence. If the gravamen of the action against the State were professional negligence, MICRA would not apply as the State is immune from liability for such negligence of its employees.

Moreover, the State has not argued that it is a "health care provider" as defined in MICRA. Rather, the State infers that it is the legal representative of a health care provider, but provides no authority in support of that doubtful proposition.[3]

 The State argues that it would be anomalous to apply MICRA limitations to recovery against the State doctors but not to recovery against

---

[3] Neither Civil Code section 3333.2 nor any other MICRA section defines the term "legal representative." It is a principle of statutory construction that where a statute does not contain a specific definition of a term, its ordinary, usual meaning should apply. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].)

Ballentine's Law Dictionary (3d ed. 1969) page 721, defines "legal representative" as: "In primary meaning, an executor or administrator; in secondary meaning, one who succeeds to the rights of another, such as an heir, next of kin, devisee or legatee, assignee, trustee, receiver, etc. . . . ." Black's Law Dictionary (5th ed. 1979) page 807, contains a similar definition. California Probate Code section 108 gives the word a similar meaning.

The apparent intent of the Legislature in including the term "legal representatives" in the code definition of a health care provider was to extend to the heirs of a physician, or other medical classifications considered therein, the same protection afforded to the medical provider in suits *against* the provider's estate if the provider is deceased at the time the legal action is brought.

The State is not the legal representative of the physicians for purposes of these sections.

the State itself based upon the same negligent acts of the doctors in failing to summon medical care. It would be at least equally anomalous, we think, to insulate the State from liability simply because, fortuitously, the employees who failed to summon assistance were doctors rather than other prison personnel. Nothing in the relevant statutes warrants such protection for the State. Under the circumstances, the principle articulated in *Waters* v. *Bourhis, supra,* 40 Cal.3d 424, justifies denial to the State of the benefits of MICRA.

## C.

### *No invited error or waiver of error*

██ ██ ██ ██ ██ Emphasizing plaintiff's failure at trial to challenge MICRA's applicability to the State despite defendant's assertion of the statute as an affirmative defense, defendants argue that if any error was committed plaintiff not only invited the error but waived it.[4] As earlier indicated, we disagree.

Plaintiff did not argue below that MICRA was inapplicable to the cause of action for failure to summon medical aid presumably because such an argument concedes the constitutionality of MICRA, and was therefore inconsistent with plaintiff's principal contention that the statute was unconstitutional. Though the arguments certainly could have been made in the alternative, and it was unwise not to advance them in that fashion, the failure to do so does not amount to invited error or waiver.

██ The doctrine by which an appellate court in its discretion may refuse to consider an argument not raised below is premised on the assumption that "it is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial." (9 Witkin, Cal. Procedure, *supra,* Appeal, § 311, p. 321, italics in original.) The rule is limited to matters involving errors which could have been cured in the trial court, for instance by introduction of additional evidence or

---

[4] Plaintiff counters that the error was "jurisdictional" and that jurisdictional error can never be waived. (*Petty* v. *Manpower, Inc.* (1979) 94 Cal.App.3d 794, 799 [156 Cal.Rptr. 622].) Plaintiff here appears to have confused a court's actions in excess of jurisdiction or contrary to a controlling statute with the lack of jurisdiction in the fundamental sense or subject matter jurisdiction. (See 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 1, pp. 365-367, § 2, pp. 367-368, § 3, p. 368, § 10, pp. 374-376.) Subject matter jurisdiction may not be conferred by consent, waiver, or estoppel. The same is not necessarily true of a court's actions in excess of jurisdiction. (*Id.,* §§ 220-221, pp. 607-611; see *Pressler* v. *Irvine Drugs, Inc.* (1985) 169 Cal.App.3d 1244, 1250-1251 [215 Cal.Rptr. 807], and fn. 19, finding the plaintiff acquiesced in the method suggested by trial court for invoking special findings after the jury verdict.)

framing of correct instructions. (*Id.,* § 315, p. 326.) It does not apply to a "noncurable defect of substance where the question is one of law ...." (*Ibid.*)

 Here, the point neglected below is purely a question of law: application of MICRA to actions against the State for failure to summon medical aid. There is nothing the court or opposing counsel could have done in this instance to remedy the matter had it been timely raised. Defendants argue that plaintiff invited error by positing liability of the State upon the malpractice of its employee doctors, and that this error was "correctable." They reason that had plaintiff argued below that MICRA was inapplicable to the State, the court could have given instructions that the State was immune from liability, negating plaintiff's theory of the case, and the State could have moved for nonsuit. Having previously rejected the State's claim that the judgment against the State rested on malpractice grounds and having held that plaintiff did adequately plead and pursue a cause of action for failure to summon medical aid against the State, we must also reject the argument that the error in question was remediable.

We therefore conclude that the error was neither invited nor waived by plaintiff's failure to raise it below.

## D.

*The State's liability is not limited to its proportionate share of damages*

 The State next concludes, without citation of authority, that even if MICRA does not apply to it, it should not be held liable for the entire $300,000 general damages which the court struck from the verdict, but that its liability should be limited to its proportionate share of the damages (35 percent). The State argues that it is unfair to hold it liable for the entire $300,000 where the exposure of the remaining medical defendants for noneconomic damages is limited by MICRA to a total of $250,000. This argument ignores the fact that at the time of entry of judgment herein, the principle of joint and several liability was established and in force for all joint tortfeasors. The State's plight is no worse than that of any other nonmedical joint tortfeasor when any number of concurrent multiple defendants may be medical personnel able to claim the benefits of MICRA. The unfairness which results is not unlike that faced by a defendant found proportionately responsible for a small percentage of the damages where joint tortfeasors are as a practical matter judgment proof. (See *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 589-591 [146 Cal.Rptr. 182, 578 P.2d 899]; cf. *Ash* v. *Mortensen* (1944) 24 Cal.2d 654, 657 [150˙ P.2d 876].)

. . . . . . . . . . . . . . . . . . . . . . .*

 The judgment is reversed insofar as it applies the limitations of MICRA to the State of California and insofar as it provides for periodic payments. In all other respects the judgment is affirmed. The cause is remanded to the superior court for modification of the judgment consistent with the views expressed in this opinion. Plaintiff is awarded his costs on appeal.

Rouse, J., and Benson, J., concurred.

---

* See footnote, *ante*, page 1106.