[No. B040049. Second Dist., Div. Five. May 10, 1990.]

KEVIN WILEY, a Minor, etc., Plaintiff and Respondent, v.
SOUTHERN PACIFIC TRANSPORTATION CO., Defendant and
Appellant.

**[Opinion certified for partial publication.\*]**

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for
publication with the exception of part III. B.2.

COUNSEL

Morris, Polich & Purdy, Robert S. Wolfe and Douglas J. Collodel for Defendant and Appellant.

A. L. Renick for Plaintiff and Respondent.

OPINION

TURNER, J.—

I.

PROCEDURAL HISTORY

Defendant, Southern Pacific Transportation Co., appeals from an order granting plaintiff's motion for new trial on the grounds of juror misconduct. Defendant also appeals from the court's orders denying its motion for

judgment notwithstanding the verdict and its motion to amend or correct the judgment.

Plaintiff, Kevin Wiley, by and through his guardian ad litem, filed a complaint against the defendant for general and special damages resulting from an injury he received while climbing over defendant's train. Plaintiff's father did not seek to recover any damages or expenses. Defendant filed an answer asserting the comparative negligence of the minor and the father. The jury returned a special verdict against the defendant. The jury assessed defendant's negligence at 25 percent and plaintiff's comparative negligence at 75 percent. The father was found not to have been negligent. Plaintiff's total damages before apportionment were found to be $125,000 excluding medical expenses. The jury found that plaintiff's medical expenses were $53,366. The award of medical expenses was not reduced by the percentage of plaintiff's comparative fault.

On December 15, 1988, the court entered judgment for plaintiff for $84,616. Defendant filed a motion for judgment notwithstanding the verdict on the grounds that there was no evidence that defendant had been negligent due to plaintiff's trespass on its property and that the sole proximate cause of plaintiff's injury was his decision to climb over the train. In the alternative, defendant moved for a new trial or to amend the judgment on the grounds that the court had erroneously refused to reduce the award for medical expenses by the percentage of plaintiff's comparative negligence.

Plaintiff filed a new trial motion on December 30, 1988. One of the grounds for the motion was juror misconduct. In support of the motion, plaintiff attached the declaration of one juror, Victor Greene. Greene indicated that one of the jurors, Alphonso Trezevant, stated during deliberations that he had been sued by a boy who had trespassed on his property and was injured while playing near Mr. Trezevant's car. Plaintiff contended that Mr. Trezevant concealed this fact during jury voir dire.

The trial court denied defendant's motions and granted plaintiff's motion for a new trial on the sole ground of juror misconduct for intentional concealment of bias during voir dire examination of the prospective juror. Defendant filed a timely notice of appeal from the court's orders.

## II.

### TRIAL TESTIMONY

When plaintiff was 12 years old, he was injured while climbing between 2 railroad cars. About two months before the accident, plaintiff had enrolled

in a junior high school that was about three blocks to the north of where the railroad tracks were located. Although plaintiff's father bought him an Rapid Transit District bus pass for transportation to and from school, plaintiff, unbeknownst to his father, began walking home with some of his friends who lived on his block. On the day of the accident, plaintiff and two other boys, who were kept after school in detention, decided to take a shortcut home through defendant's railroad yard. Plaintiff could have used public streets to walk home. When they reached the tracks, a train that was approximately a mile long blocked their way. The train was not moving. Because the boys could not see the end of the train in either direction, they decided to climb over the train. The two other boys climbed up a ladder on one of the trilevel cars and avoided stepping on the couplings. A coupling is a mechanism that connects the railroad cars to each other. As plaintiff attempted to cross over the train by stepping on a coupling, he heard a loud noise as the train started to move backwards. His left foot was caught between and crushed in the moving coupling device. Plaintiff was unable to remove his foot from the device until the other boys alerted the crew to stop the train which caused the coupling to open. As a result of the accident, plaintiff's toes on his left foot and part of the left foot were amputated. Plaintiff testified that he did not believe that there was any danger to him from climbing over a stationary train. He felt that because of the length of the train, if it did start to move, it would have done so slowly and he would have been able to climb off without injury.

School personnel were aware that for at least 20 years, students walked to and from the school over the railroad tracks. Railroad employees were also aware that the children walked on the tracks. The children believed that they were taking a "shortcut" over the railroad tracks. Conflicting evidence was presented by the parties as to how much the school warned the students about walking over the railroad tracks. Railroad personnel testified although they were aware that the children were regularly using the tracks, that as long as the children did not create any problems, they left the children alone. Brian Butterfield, an employee of defendant who moved locomotives around the railroad yard, said of the children who were on railroad property, "If they don't bother us, we don't bother them."

Plaintiff presented opinion testimony from a human factors research scientist that the absence of safeguards to protect children near the railroad tracks constituted an unsafe condition. The witness, Dr. Slade Hulbert, concluded that the railroad had a duty to take steps to prevent injury to the students walking through the railroad yard from the school.[1] Evidence was

[1] The measures were as follows: (1) continuous education in the local schools; (2) policing the area with a security force; (3) fencing; (4) warning signs posted on the fences; (5) training crews to look for children and adults prior to moving the train; and (6) blowing a horn or

presented that, on January 11, 1984, prior to plaintiff's enrollment at the junior high school, the railroad presented a safety film to the students.

## III.

### DISCUSSION

### A. MOTION FOR A NEW TRIAL

1. The declaration in support of the new trial motion.

■■■ Defendant contends that the court erred when it granted the motion for new trial. Plaintiff supported the new trial motion with the declaration of one juror, Victor Greene,[2] which the plaintiff argues shows that Mr. Trezevant intentionally concealed his bias against plaintiff during voir dire.[3]

whistle before moving the train where the crew has prior knowledge that children are in the area.

[2] In his declaration Mr. Greene stated: "[D]uring deliberations, Juror number 2, Alphonso Trezevant, said that he had had problems with trespassing on his own property. He then went on to say that he had had a car up on jacks and that a boy had come on to the property and played with the jacks. That as a result, the car fell and the boy was injured. He said the boy filed a lawsuit. He then said, 'I have no sympathy for any trespasser and they deserve whatever happens to them.' [¶] He consistently dominated the discussions speaking very loudly and making it extremely difficult for others to talk and express their thoughts. He was against Kevin on every issue and finally when we were discussing the subject of damages he proposed damages of zero dollars. [¶] Several times when we voted on one issue and were going to turn our attention to the next question on the special verdict form, Mr. Trezevant would say, 'you know how I'm going to vote—I'm not going to give them anything.' He would state this before there even was any discussion on the question. In other words, before we even got to the next question . . . . [¶] The Court had given us instructions to form our own opinions but his statements preceding each question made this very difficult. [¶] Additionally no discussion we had ever changed his mind. He consistently stated that he wouldn't give the plaintiff anything."

[3] The following questions were posed generally to the jurors either by counsel or by the court and Mr. Trezevant did not reveal the incident in which he had been sued:

(By the court) "Do any of you have a belief or feeling towards any of the parties, attorneys or witnesses that might be regarded as bias or prejudice against them or for them?"

(By the court) "Do any of you have a mind set which you believe that you have either a floor or ceiling on damages if appropriate under the case?"

(By the court) "Now that you've heard a lot of these questions that I asked and something about this case, now that you've searched your mind, is there anything else that you may have missed that you want to tell me and you want to tell counsel that you feel we should know that may affect your impartiality?"

(By the court) "Does anybody in their mind, if you look at it from the point of view of a race or contest does anybody as you sit here have a head start in your mind?"

(By plaintiff's counsel) "I would like to know generally those people that have been involved in some kind of accident—I mean not necessarily just the loss of limbs, but anything.

■ Jurors are competent witnesses to prove objective factors to impeach a verdict. (*People* v. *Hutchinson* (1969) 71 Cal.2d 342, 351 [78 Cal.Rptr. 196, 455 P.2d 132]; Evid. Code, § 1150.) ■ Improper influences that may be proved pursuant to Evidence Code section 1150 to impeach a verdict are limited to those open to sight, hearing and other senses that are subject to corroboration. (*Tillery* v. *Richland* (1984) 158 Cal.App.3d 957, 974 [205 Cal.Rptr. 191].) ■ The declaration in this case described Mr. Trezevant's conduct during deliberations and discloses that he told his fellow jurors that he had been previously sued by a minor who had trespassed on his property. It also demonstrated that Mr. Trezevant disclosed for the first time during jury deliberations that he had a strongly held negative opinion about trespassers and whether they are entitled to recover for their injuries sustained while trespassing.

2. The failure to file the "no-knowledge" declaration.

Defendant contends that plaintiff's motion for a new trial should have been denied because he failed to file a "no-knowledge" declaration. ■ A party who is requesting the court to grant a new trial on the ground of juror misconduct must file a "no-knowledge" declaration which states that neither the attorney nor the client was aware of the alleged misconduct of the juror prior to the verdict. (*Weathers* v. *Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 103 [95 Cal.Rptr. 516, 485 P.2d 1132]; *Lindemann* v. *San Joaquin Cotton Oil Co.* (1936) 5 Cal.2d 480, 495-496 [55 P.2d 870]; *Crespo* v. *Cook* (1959) 168 Cal.App.2d 360, 363 [336 P.2d 31].) It has been held that the requirement is inflexible pursuant to "uninterrupted case authority since at least *Sherwin* v. *Southern Pacific Co.* (1914) 168 Cal. 722, 726 [145 P. 92] . . . ." (*People* v. *Southern Cal. Edison Co.* (1976) 56 Cal.App.3d 593, 598-599 [128 Cal.Rptr. 697].) The policy behind this requirement "is to prevent a party who, personally or through counsel, has discovered some jury misconduct during the course of the proceedings from gambling on the outcome of the jury's deliberations while secretly preserving the error to be raised on a motion for a new trial in the event of an unfavorable verdict." (*Weathers* v. *Kaiser Foundation Hospitals, supra,* 5 Cal.3d at p. 103.)

---

In other words, where you've been in some sort of an accident—let's put it this way—where a claim resulted."

(By defense counsel) "With regard to you people that are on the jury, have any of you had any trouble with people who trespass upon your property?"

(By defense counsel) "Is there anybody on our panel of the 18 people to whom I'm addressing now—have any of you ever been assaulted, bothered, other than, of course, what Mrs. Mora has already told us, by a trespasser?"

When asked specifically by defense counsel of the problems that he had had with trespassers, Mr. Trezevant replied: "My house is a corner house and there's a 7-Eleven about a block away. They would come and go into the driveway and sit and drink beer. It would be off the street. So I would come in and there would be strangers sitting back there drinking beer, wine, whatever."

None of these cases, however, addressed the issue in this case which is whether a party, on appeal, may raise the failure to file the "no knowledge" declaration in the trial court as a basis for reversal of an order granting a new trial motion when the absence of such a declaration was not raised in the trial court.[4]

Plaintiff is correct that defendant invited the error by failing to object in the trial court and has waived its right to object on appeal. The rule of invited error by waiver does not apply to noncurable defects of substance

[4]The requirement that a declaration be filed in cases involving juror misconduct which states that neither the client nor her or his counsel was aware of the improper conduct is a judicially declared rule. The "no-knowledge" declaration filing requirement is not contained in the new trial provisions of the Code of Civil Procedure. (Code Civ. Proc., §§ 655-663.2.) The first case in California to require the filing of such a declaration was *Sherwin v. Southern Pacific Co.* (1914) 168 Cal. 722, 726 [145 P. 92], a 1914 decision. *Sherwin* relied on a textbook and a Missouri Supreme Court case, *State v. Barrington* (1906) 198 Mo. 23 [95 S.W. 235, 257-258], as authority for the requirement that the aforementioned declaration was a precondition to the granting of a new trial motion. The failure to file the declaration was regularly referred to as "fatal" to a new trial motion premised on juror misconduct in both criminal and civil cases (*People v. Sanchez* (1965) 232 Cal.App.2d 812, 819 [43 Cal.Rptr. 131]), and the requirement was described by a court as an "inflexible requirement." (*People v. Southern Cal. Edison Co.*, *supra*, 56 Cal.App.3d at p. 598.) However, the rigid rule was subject to several judicially created exceptions. Initially, the rule required that *both* the client and counsel sign declarations attesting to their absence of knowledge of the juror misconduct prior to the return of the verdict. (*Markaway v. Keesling* (1963) 211 Cal.App.2d 607, 612 [27 Cal.Rptr. 583].) In *Weathers v. Kaiser Foundation Hospitals*, *supra*, 5 Cal.3d at pages 105-106, the Supreme Court broadly construed an attorney's declaration as to the state of mind of his clients and cocounsel in order to comply with the rule. In *Clemens v. Regents of University of California* (1971) 20 Cal.App.3d 356, 365-366 [97 Cal.Rptr. 589], the juror bias was discovered on the 15th day of a 33-day trial and a prompt motion to disqualify the juror was made and denied. The court held that the making of the motion obviated the necessity of filing the "no-knowledge" declaration. (*Id.* at p. 366.) In *Krouse v. Graham* (1977) 19 Cal.3d 59, 82 [137 Cal.Rptr. 863, 562 P.2d 1022], and *People v. Adame* (1973) 36 Cal.App.3d 402, 409-410 [111 Cal.Rptr. 462], the courts held that no declaration need be filed where the misconduct occurred in the jury room during secret deliberations and the facts could not therefore necessarily be known.

As noted in the body of this opinion, none of the California cases which directly or inferentially hold that the "no-knowledge" declaration must be filed have held that the issue of the absence of such declarations may be raised for the first time on appeal when there was no objection presented in the trial court. (*Weathers v. Kaiser Foundation Hospitals*, *supra*, 5 Cal.3d at pp. 103-111; *Krouse v. Graham*, *supra*, 19 Cal.3d at p. 82; *Lindemann v. San Joaquin Cotton Oil Co.*, *supra*, 5 Cal.2d at p. 486; *Sherwin v. Southern Pacific Co.*, *supra*, 168 Cal. at p. 726; *People v. Southern Cal. Edison Co.*, *supra*, 56 Cal.App.3d at p. 598; *People v. Adame*, *supra*, 36 Cal.App.3d at pp. 409-410; *Clemens v. Regents of University of California*, *supra*, 20 Cal.App.3d at pp. 365-366; *People v. Sanchez*, *supra*, 232 Cal.App.2d at p. 819; *Cembrook v. Sterling Drug Inc.* (1964) 231 Cal.App.2d 52, 67 [41 Cal.Rptr. 492]; *Richards v. Gemco* (1963) 217 Cal.App.2d 858, 863; *Markaway v. Keesling*, *supra*, 211 Cal.App.2d at p. 612; *Crespo v. Cook*, *supra*, 168 Cal.App.2d at p. 363; *Estate of Nessel* (1958) 164 Cal.App.2d 798, 806 [331 P.2d 205]; *Dunford v. General Water Heater Corp.* (1957) 150 Cal.App.2d 260, 265 [309 P.2d 958]; *Forman v. Alexander's Markets* (1956) 138 Cal.App.2d 671, 674-676 [292 P.2d 257]; *Newman v. Los Angeles Transit Lines* (1953) 120 Cal.App.2d 685, 694 [262 P.2d 95]; *Gray v. Robinson* (1939) 33 Cal.App.2d 177, 183 [91 P.2d 194]; *Lafferty v. Market Street Ry. Co.* (1935) 7 Cal.App.2d 698, 702-703 [46 P.2d 996].)

where the question is one of law such as lack of jurisdiction or complete failure to state a cause of action. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 315, p. 326.) It "is limited to matters involving errors which could have been cured in the trial court, for instance by introduction of additional evidence or framing of correct instructions." (*Flores* v. *Natividad Medical Center* (1987) 192 Cal.App.3d 1106, 1117-1118 [238 Cal.Rptr. 24].) ■ As a general rule, an appellate court will not consider procedural defects in connection with either relief sought or a defense asserted where no objection was made to the lower court. (*State of California* ex rel. *Public Works Bd.* v. *Bragg* (1986) 183 Cal.App.3d 1018, 1023 [228 Cal.Rptr. 576].) ■ For the reasons stated below, the failure to file the "no-knowledge" declaration was a procedural defect which could have been corrected at the time of the hearing had it been raised and not a noncurable defect of substance.

Code of Civil Procedure section 659a provides that a party has 10 days from the date of filing of the notice of motion for new trial to file affidavits. The period can be extended by an additional 20 days for good cause. However, it has been held that the time limits for filing the affidavits in support of a new trial motion are not jurisdictional in contrast to the time limit for filing the new trial motion under Code of Civil Procedure section 659. (*Clemens* v. *Regents of University of California, supra*, 8 Cal.App.3d 1, 21-22; *Boynton* v. *McKales* (1956) 139 Cal.App.2d 777, 782 [294 P.2d 733]; 8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, § 66, p. 464.) Defendant admitted in its reply brief that plaintiff had until January 29, 1989, to file additional affidavits. The hearing on the new trial motion was January 27, 1989. At the time that the trial court granted the motion, the error could have been cured by additional declarations from plaintiff and his attorney. By failing to raise the defect in the superior court, defendant deprived the trial court and plaintiff of the opportunity to cure it. For that reason, defendant may not raise for the first time on appeal plaintiff's failure to file the "no knowledge" declaration.

3. The merits of intentional concealment issue.

■ Defendant also contends that the trial court erred in finding that the juror committed misconduct. The Supreme Court has held, " 'The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to trial by jury guaranteed by the Constitution.' " (*Weathers* v. *Kaiser Foundation Hospitals, supra*, 5 Cal.3d at p. 110, quoting *People* v. *Galloway* (1927) 202 Cal. 81, 92 [259 P. 332].) Juror misconduct is a ground for new trial. (Code Civ. Proc., § 657, subd. (2).) ■ " '[T]he granting of a motion for new trial rests so completely within the discretion of the trial judge that an appellate court will not interfere with his action unless a manifest and unmistakable abuse of discretion clearly appears.' " (*Weathers*

v. *Kaiser Foundation Hospitals, supra,* 5 Cal.3d at p. 109.) ■ In ruling on a new trial motion premised on misrepresentations by a juror during voir dire, a trial court is required to determine whether the questions propounded to the juror were relevant and unambiguous. Also, the court must find whether the juror had substantial knowledge of the information sought to be elicited. (*People* v. *Diaz* (1984) 152 Cal.App.3d 926, 935 [200 Cal.Rptr. 77].) ■ While the question posed by the plaintiff's attorney about the jurors' involvement in any accident is ambiguous, other questions posed to the jurors collectively and to Mr. Trezevant specifically about his problems with trespassers were unambiguous. Furthermore, the questions were relevant to this case in that both this case and Mr. Trezevant's own lawsuit involved minor children who were injured while allegedly trespassing on private property. Since Mr. Trezevant was a party to the lawsuit filed against him, the trial court in the present suit reasonably could find that he had substantial knowledge of the facts in other litigation.

Defendant contends that there was no evidence to establish that the juror's statements were improper or that they wrongly tainted the verdict. ■ However, a juror's intentional concealment of relevant facts or giving false answers during the voir dire examination constitutes misconduct and raises a presumption of prejudice. (*People* v. *Blackwell* (1987) 191 Cal.App.3d 925, 929 [236 Cal.Rptr. 803].) The presumption could be rebutted by " 'an affirmative evidentiary showing that prejudice does not exist or by a reviewing court's examination of the entire record to determine whether there is a reasonable probability of actual harm to the complaining party resulting from the misconduct.' " (*People* v. *Diaz, supra,* 152 Cal.App.3d at p. 934.) ■ The trial court reasonably could have concluded that no affirmative showing of an absence of prejudice was demonstrated by defendant.

Defendant also contends that the record does not establish intentional concealment of bias since the juror was never affirmatively asked whether any lawsuits had been filed against him. Defendant also claims that the evidence, at most, points to an inadvertent concealment which is not grounds for misconduct. (*Jutzi* v. *County of Los Angeles* (1987) 196 Cal.App.3d 637, 655 [242 Cal.Rptr. 74].) Although Mr. Trezevant was not specifically asked whether he had ever been sued by a trespasser, the questions posed to him specifically and to the panel generally were sufficient to invoke him to disclose his bias. At the beginning of voir dire, the court posed a general question to all the jurors as to whether they had a bias towards or against either of the parties. Defense counsel specifically asked Mr. Trezevant what experience he had had with trespassers. Thus, it is clear that on at least two occasions during the voir dire, Mr. Trezevant had the opportunity to disclose the lawsuit against him and his general bias against all trespassers. He did not disclose these facts. The trial court could proper-

ly conclude that Mr. Trezevant's failure to do so was intentional concealment of bias during voir dire. Under these standards, after examining the entire record, there is no showing the trial court manifestly and unmistakably abused its discretion. Accordingly, the order granting the motion for new trial is affirmed.

### B. Judgment Notwithstanding the Verdict

Defendant contends that the trial court should have granted its motion for judgment notwithstanding the verdict since as a matter of law it cannot be held liable for plaintiff's injury. Defendant presents two arguments. First, defendant argues that Civil Code section 1714.7 provides an immunity to railroads for injuries sustained by a person who, without permission of the railroad, climbs on a stationary railroad car. Second, defendant argues that it owes no duty to plaintiff, an alleged trespasser.

The test for determining whether to grant a motion for judgment notwithstanding the verdict is: "The trial judge's power to grant a judgment notwithstanding the verdict is identical to [her or] his power to grant a directed verdict. [Citations.] The trial judge cannot weigh the evidence [citation], or judge the credibility of witnesses. [Citation.] If the evidence is conflicting or if several reasonable inferences may be drawn, the motion for judgment notwithstanding the verdict should be denied. [Citations.] 'A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied.' (*Brandenburg* v. *Pac. Gas & Elec. Co.* (1946) 28 Cal.2d 282, 284 [169 P.2d 909].)" (*Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 110-111 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282].)

1. The Immunity Issue.

Defendant cites Civil Code section 1714.7[5] and Penal Code section 587b[6] to support its contention. The authorities relied upon by defendant

---

[5] Civil Code section 1714.7 provides: "No person who is injured while getting on, or attempting to get on, a moving locomotive or railroad car, without authority from the owner or operator of the railroad, or who, having gotten on a locomotive or railroad car while in motion without such authority, is injured while so riding or getting off, shall recover any damages from the owner or operator thereof for such injuries unless proximately caused by an intentional act of such owner or operator with knowledge that serious injury is the probable result of such act, or with a wanton and reckless disregard of the probable result of such act."

[6] Penal Code section 587b provides: "Every person, who shall, without being thereunto authorized by the owner, lessee, person or corporation operating any railroad, enter into, climb upon, hold to, or in any manner attach himself to any locomotive, locomotive-engine tender, freight or passenger car upon such railroad, or any portion of any train thereon, shall be deemed guilty of a misdemeanor, and, upon conviction thereof shall be punished by a fine not

are not dispositive of the issue raised in this case. The language of Civil Code section 1714.7 itself only precludes a plaintiff from recovering for injuries received "while getting on, or attempting to get on, a moving [train]" or for injuries received after "having gotten on a [train] while in motion."

The language of this statute does not encompass the conduct in this case. ■■■ It is a fundamental rule of statutory construction that the court must ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*People* v. *Aston* (1985) 39 Cal.3d 481, 489 [216 Cal.Rptr. 771, 703 P.2d 111].) In order to determine that intent, the court must first look to the words of the statute itself. (*Ibid.*) When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it. (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) ■■■ In this case, Civil Code section 1714.7 is so clear and unambiguous that there is no need for construction. The plain meaning of the statute cannot be enlarged to include a person injured after climbing onto a stationary train. Our interpretation of the statute is in accord with *Perez* v. *Southern Pacific Transportation Co.* (1990) 218 Cal.App.3d 462, 469 [267 Cal.Rptr. 100], where the court held that "[t]he Legislature intended to deny recovery only to trespassers injured while getting on a moving train, or while riding or getting off a moving train after having gotten on while the train was in motion."

Relying on *Rivera* v. *Southern Pacific Transportation Co.* (1990) 217 Cal.App.3d 294, 300 [266 Cal.Rptr. 11], defendant urges this court to interpret Civil Code section 1714.7 broadly to encompass the situation in this case where a person boards a stationary train and is injured when the train starts to move. Defendant relies on the language in *Rivera* where the court stated that there is "little reason to distinguish between a moving and a pausing train, as a pause would not be long enough to permit an inspection for riders." (*Ibid.*) However, in *Rivera*, the plaintiff "climbed onto a slowly moving [railroad] car." (*Id.* at p. 298.) The immunity in Civil Code section 1714.7 clearly applies when the train is moving.[7] Apart from the fact

exceeding fifty dollars ($50), or by imprisonment not exceeding 30 days, or by both such fine and imprisonment."

[7] The language in *Rivera* relied upon by defendant does not hold that the immunity in Civil Code section 1714.7 applies when a person boards a stationary train. The entire paragraph in which the language relied upon by defendant appears states: "Moreover, appellant's answers to the interrogatories did not raise a triable issue of fact sufficient to defeat respondent's motion for summary judgment. Appellant seeks to exclude from the application of Civil Code section 1714.7 injuries incurred while hopping trains which have momentarily stopped. Reading the statute in light of Penal Code section 587b, which makes train hopping a misdemeanor, it is evident that the purpose of the statute is to prevent liability where the railroad company is not easily able to ascertain if unauthorized persons have boarded the train. (See *Durham* v. *City of Los Angeles* (1979) 91 Cal.App.3d 567, 574 [].) Ascertainment is easier if the train is in fact stationary; i.e., an inspection can be made before the train begins its jour-

that the court in *Rivera* was not intending to apply Civil Code section 1714.7 to a case where a person climbs on a stationary train, defendant's argument lacks merit because if the *Rivera* court's statement was applicable to a person boarding a stationary train, the language cited by defendant would be dicta. ■■ Language in an opinion is to be "understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered." (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].) ■■ ■ ■ ■ Furthermore, such an interpretation as urged by defendant would amount to an impermissible rewriting of "the statute in the guise of construing it . . . . " (*Solberg* v. *Superior Court, supra,* 19 Cal.3d at 198.)[8] We do not believe that the statute covers this particular conduct. As discussed above, the Legislature made an explicit distinction and we will not read words into the statute that are simply not there.

## 2. The duty question.*

. . . . . . . . . . . . . . . . . . . . .

---

ney. There would be little reason to distinguish between a moving and a pausing train, as a pause would not be long enough to permit an inspection for riders." In the following paragraph, Associate Justice Stein, the author of the opinion, discussed the common law rule concerning moving trains. (*Rivera* v. *Southern Pacific Transportation Co., supra,* 217 Cal.App.3d at pp. 300-301.) At no time did Justice Stein directly or inferentially suggest that the immunity applied to a person climbing on a stationary train. We respectfully conclude that defendant's argument that *Rivera* extends the immunity in Civil Code section 1714.7 to a person boarding a stationary railroad car, is the result of taking a single sentence in *Rivera* out of the context intended by Justice Stein.

[8] The original version of Senate Bill No. 1294, which enacted Civil Code section 1714.7, was an act to amend section 587b of the Penal Code. It provided a broad immunity to railroads for injuries to trespassers. The original bill made no distinction between a moving and stationary train. The amendment read. "No person who is injured while getting on, riding or getting off a locomotive or car without authority to do so from the owner or operator of the railroad, or who is injured by a locomotive or car while walking, standing, or playing on any railroad track or right-of-way without such authority, shall recover any damages from such owner or operator for injuries sustained while engaging in such activities unless such injuries are proximately caused by the intentional doing of an act by such owner or operator with knowledge that serious injury is the probable result or with a wanton and reckless disregard of its probable result." Subsequent amendments to the bill narrowed the language to deny recovery for those injured while attempting to get on a moving train or for injuries received after the person boarded a train that had been moving. The final version limited the application of the law to persons injured as a result of boarding a moving train. There was no evidence presented at trial that the train was moving prior to plaintiff's attempt to climb over the train. Defendant is asking this court to adopt an interpretation of Civil Code section 1714.7 which was specifically rejected by the Legislature. For three justices to construe a law in a fashion inconsistent with statutory language deliberately chosen by a majority of the Legislature and approved by the Governor, in the absence of a constitutional infirmity, is an act squarely in contravention of the fundamental principles of a democratic form of government.

* See footnote, *ante,* page 177.

## IV. MEDICAL EXPENSES

 Defendant contends the trial court's determination, that the award of medical expenses contained in the jury's special verdict could not be reduced by the percentage of damages attributable to plaintiff's negligence, was incorrect. The complaint was brought by "KEVIN WILEY, minor by and through his Guardian Ad Litem, GEORGE R. WILEY." The complaint clearly states that the sole plaintiff is Kevin Wiley. When the subject of whether to reduce the amount of damages based on plaintiff's comparative negligence was discussed at the trial court, plaintiff's lawyer said that no cause of action had been brought by plaintiff's parents for recovery of plaintiff's medical damages. The jury returned special verdicts and found that excluding medical expenses, plaintiff's requested damages were in the sum of $125,000 and separately found that medical expenses were incurred "by, or on behalf of, plaintiff . . . " in the sum of $53,366. The jury found that 25 percent of the total negligence was attributable to defendant and 75 percent was assignable to plaintiff. The court entered judgment on the special verdicts in the sum of $84,616. This amount is calculated by reducing the damage award excluding medical expenses of $125,000 to $31,250 based on plaintiff's 75 percent contributory responsibility for his own injuries as found by the jury. The court then awarded plaintiff the full $53,366 determined by the jury to be plaintiff's medical expenses. Although the court reduced the damages excluding medical expenses by plaintiff's 75 percent comparative negligence, the trial court did not similarly reduce the medical expenses incurred by plaintiff. The order granting the motion for a new trial renders this issue moot. However, the issue is one that is certainly likely to reoccur on retrial, if the case does not settle, and the parties have thoroughly briefed the issue. The issue therefore is one that is appropriate for resolution on this appeal.

 An injured minor may recover for her or his medical expenses even though they may have been paid by a parent. Both a minor and his or her parents have standing to sue for the child's medical expenses resulting from a defendant's tortious conduct. (*White* v. *Moreno Valley School Dist.* (1986) 181 Cal.App.3d 1024, 1030 [226 Cal.Rptr. 742].) Although most cases discussing a parents' and child's joint right to sue for medical expenses do so in the context of a parent waiving her or his right to recover medical expenses because the parent has sued as a guardian ad litem (*ibid.*), in this case, there is no issue of the parents' recovering for plaintiff's medical expense. Plaintiff's highly experienced and respected personal injury counsel in the trial court explicitly and correctly stated that the only issue as framed by the pleadings in this case was plaintiff's right to recover his own medical expense, not his parents' right to be compensated for their damages.

The parties in this lawsuit have referred this court to authority which conclude that a parent's claim for recovery of a child's medical damages is subject to reduction based on the minor's imputed negligence. For example, the Restatement Second of Torts, sections 494 and 703[15] state that a child's negligence contributing to her or his injuries is a defense to the parent's action for losses as a consequence of those injuries. Also, in *Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 551-552 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158], the Supreme Court stated that a parent's claim for medical expense incurred on behalf of a child was to be reduced by the child's negligence. These and other authorities cited by the parties are irrelevant to the issue present in this case. The rule of comparative negligence enunciated in *Li* v. *Yellow Cab* (1975) 13 Cal.3d 804, 829 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], applies to a minor who seeks compensation for medical expenses. The question of whether a minor's comparative negligence may be asserted by a defendant against a parent's claim for reimbursement for medical expenses incurred on behalf of a child is not an issue in the present lawsuit. Therefore, we respectfully conclude that the trial court erroneously failed to reduce the amount of medical expenses by plaintiff's comparative negligence. If the parties are unable to settle this case and there is a retrial, any compensation for medical expenses shall be reduced by plaintiff's comparative negligence.

## V. DISPOSITION

The order granting a new trial is affirmed. In the event of a retrial, any judgment for plaintiff's medical expenses shall be apportioned in accordance with the views expressed in this opinion. The order denying the judgment notwithstanding the verdict motion is affirmed. Plaintiff is to recover his costs on appeal.

Lucas, P. J., and Ashby, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 25, 1990.

---

[15] Section 494 of the Restatement Second of Torts provides: "The plaintiff is barred from recovery for an invasion of his [or her] legally protected interest in the health or life of a third person which results from the harm or death of such third person, if the negligence of such third person would have barred [her or] his own recovery." Section 703 states in relevant part: "One who by reason of his tortious conduct is liable to a minor child for illness or other bodily harm is subject to liability to . . . the parent who is under a legal duty to furnish medical treatment for any expenses reasonably incurred or likely to be incurred for the treatment during the child's minority."