[No. B073110. Second Dist., Div. Six. Dec. 8, 1993.]

JAMES D. WATSON, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

COUNSEL

Philip I. Moncharsh, Rogers & Sheffield and Sayre Macneil for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Marvin Goldsmith, Assistant Attorney General, Robert H. Francis, Marsha S. Miller and Joel A. Davis, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**YEGAN, J.**—James Watson appeals from a judgment entered in favor of defendants and respondents, State of California (State) and its employees,

Richard Grantham, Ramon Portales, M.D., Chichun Kau, M.D., and Rene Iway, M.D. Appellant brought suit against State based on its alleged failure to summon and provide medical care after he injured himself at the Santa Barbara County jail and was transferred to state prison. (Gov. Code, § 845.6.)[1] The trial court granted summary judgment because no triable facts were presented that State breached a duty of care. The court further found that the cause of action against the state employees for medical malpractice was barred by the tort claims statute. (*Nelson* v. *State of California* (1982) 139 Cal.App.3d 72, 80-81 [188 Cal.Rptr. 479].) We affirm.

On February 8, 1990, appellant was an inmate at the Santa Barbara County jail and injured himself playing basketball. Nurse Gregory Jackson examined him the following day. Appellant complained that his right ankle was tender and swollen. Jackson palpitated the Achilles tendon, noting that it appeared to be intact. Appellant was given an ace bandage, pain medication, and provided in-cell feeding to minimize use of the leg. Doctor Gerhard Rohringer, a board certified internist, reviewed the medical chart but did not examine appellant. On February 17, 1990, Nurse Jackson extended in-cell feeding for three days.

On March 8, 1990, appellant was transferred to the Chino state prison where he underwent an intake physical exam. Doctor Portales and Richard Grantham, a senior medical technical assistant, examined him. Appellant complained about the ankle injury but was able to walk. Doctor Portales testified that he had no reason to examine appellant's Achilles tendon. According to Portales, a patient suffering from a torn tendon would be screaming in pain and have to use a wheelchair or crutches to move about.

On March 12, 1990, appellant walked into the prison medical clinic and was examined by Doctor Chichun Kau. Doctor Kau noted that appellant's right ankle was mildly swollen. X-rays were taken but revealed no fractures. Doctor Kau prescribed medication for a sprained ankle. On March 30, 1990, appellant reported for sick call to get a prescription refill and told Grantham that his ankle was getting better.

On April 2, 1990, appellant was transferred to the Corcoran State Prison and saw Doctor Rene Iway. Appellant wanted medication for a 10-year-old back condition. During the visit, appellant told the doctor that he had torn his Achilles tendon. Doctor Iway examined appellant's ankle, performed some range of motion tests, and noted that the Achilles tendon was tender. Based on appellant's oral history, he made an entry in the medical chart that appellant had a probable torn Achilles tendon that was mending. Appellant

---

[1] All statutory references are to the Government Code unless otherwise stated.

was furnished medication and tennis shoes because the prison boots hurt his feet. Prior to his October 19, 1990 release from prison, appellant saw the doctor five or six times.

Doctor Lin Ho later determined that appellant had ruptured his right Achilles tendon. Appellant was told that an untreated tendon could result in permanent loss of ankle flexion. Doctor Ho believed that the tendon should have been treated during appellant's incarceration. Because of the passage of time, the chances for a successful surgical repair were significantly reduced.

Appellant brought suit on the theory that the County of Santa Barbara (County) and State breached a duty to summon and provide reasonable medical care. The action was based on section 845.6 which states that ". . . a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." The complaint was later amended to add a cause of action for medical malpractice against the state employees.

County and State moved for summary judgment on the ground that they had breached no statutory duty of care. State presented uncontroverted evidence that appellant was provided prompt medical care while in state prison.[2] Appellant, however, contended that triable facts existed on the issue of whether "reasonable" medical care was furnished. Appellant represented that his medical expert, Doctor Ho, would testify that State's medical care "probably fell below the standard of care."

The trial court ruled that no triable facts were presented to support a section 845.6 claim against the State. The court granted summary judgment for the State but denied the County's motion for summary judgment. A month later, state employees Grantham, Portales, Kau, and Iway demurred to the first amended complaint on the ground it was barred by the claims presentation statute. (§§ 910, 950.2.) The trial court sustained the demurrer without leave to amend. This appeal followed.

The purpose of summary judgment is to penetrate evasive language and adept pleading and to ascertain, by means of affidavits, the presence or

---

[2]Appellant was deposed and admitted that he was seen by medical personnel each time he requested medical attention. Appellant testified:

"Q. Okay. Was there any time in your incarceration in Corcoran or Chino when you asked to be seen by medical personnel and you were not seen?

"A. No."

He later changed his answer to read: "No. But as in all cases, I received no meaningful medical attention, It was as if no one I had seen, either for the State or the County cared what my problem really was."

absence of triable issues of fact. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) On appeal, the appellate court independently reviews the construction and effect of the supporting and opposing papers and determines whether the moving party is entitled to judgment as a matter of law. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)

Here the action is based on a statutory duty to summon medical care. ██ Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care. (*Kinney* v. *Contra Costa County* (1970) 8 Cal.App.3d 761, 770 [87 Cal.Rptr. 638] [no liability for failure to provide medical care when prisoner complained of a bad headache and requested medication]; *Lucas* v. *City of Long Beach* (1976) 60 Cal.App.3d 341, 350 [131 Cal.Rptr. 470] [intoxication due to drugs or alcohol did not impose duty to summon immediate medical care].)

The 1963 Law Revision Commission comment to section 845.6 states: "This section limits the duty to provide medical care for prisoners to cases where there is *actual or constructive knowledge* that the prisoner is in need of *immediate* medical care. The standards of medical care to be provided to prisoners involve basic governmental policy that should not be subject to review in tort suits for damages. The immunity from liability for damages that is provided by this section exists where some other statute might be construed to impose a mandatory duty to provide medical care to prisoners under other cistumstances. In cases where another statute is so construed, the prisoner is left to the other remedies provided by law to compel public employees to perform their duties." (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1980 ed.) § 845.6, p. 414, italics added.)

██ Appellant argues that the statutory duty to "summon" medical care encompasses a duty to provide reasonable medical care. Section 845.6, however, confers a broad general immunity on the public entity. Liability is limited to those situations where the public entity intentionally or unjustifiably fails to furnish immediate medical care. (*Hart* v. *County of Orange* (1967) 254 Cal.App.2d 302, 306 [62 Cal.Rptr. 73]; Cal. Government Tort Liability Practice (Cont.Ed.Bar 3d ed. 1992) § 4.15, p. 484.) "In the second clause [of the statute], . . . liability is narrowly limited to the particular instances: (1) where the employee knows or has reason to know of the need

(2) of *immediate* medical care and (3) fails to *summon* such care." (*Sanders* v. *County of Yuba* (1967) 247 Cal.App.2d 748, 753 [55 Cal.Rptr. 852].)

Here it was uncontroverted that State provided prompt medical care. Appellant, however, argues that it had a concomitant duty to assure that its employees (i.e., the prison medical staff) properly diagnosed and treated the medical condition. Not so. Section 845.6 requires that the medical malpractice action be brought against the employees, not the public entity.[3] (*Nelson* v. *State of California, supra*, 139 Cal.App.3d 72, 78; Cal. Government Tort Liability Practice, *supra*, § 4.17, pp. 485-486.) ▮ "It is clear that the State is not vicariously liable for the medical malpractice of its employees. [Citation.] Although the State is required to pay the judgment assessed against its employees for medical malpractice committed against a prisoner, the State is immune from suit directly. [Citations.]" (*Flores* v. *Natividad Medical Center* (1987) 192 Cal.App.3d 1106, 1115 [238 Cal.Rptr. 24].)

▮ Appellant's citation of *Zeilman* v. *County of Kern* (1985) 168 Cal.App.3d 1174 [214 Cal.Rptr. 746] does not compel a different result. There, the plaintiff was on crutches at the time of her arrest and fell in the county jail. Plaintiff sued for personal injuries. The county moved for summary judgment on the ground that it was immune from liability because the plaintiff was a prisoner. (§§ 844, 844.6) Plaintiff opposed the motion on the theory that the county breached a section 845.6 duty to provide medical care. The opposing declarations stated that plaintiff was required to stand for an extended period and was in an " 'aggitated [*sic*], emotional and weakened condition' " before the fall. (168 Cal.App.3d at pp. 1177-1178.) It was uncontroverted that the plaintiff was provided no medical assistance. The trial court granted summary judgment for the county.

On appeal, the summary judgment was reversed based on section 845.6. The court of appeal held that "[t]he trier of fact should be permitted to determine, as a question of fact, whether plaintiff's use of crutches and her apparently agitated, emotional and weakened condition should have given rise to knowledge of her need for immediate medical care." (168 Cal.App.3d at pp. 1186-1187.)

The instant action is legally and factually distinguishable in two respects. First, the State had no actual or constructive notice that appellant's Achilles

---

[3]Section 845.6 states in pertinent part: "Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice or exonerates the public entity from its obligation to pay any judgment, compromise, or settlement that it is required to pay under subdivision (d) of Section 844.6."

tendon was ruptured and required surgery. None of the doctors who examined appellant recognized the extent of the injury. Section 845.6 does not require that a prison guard be a better medical diagnostician.

Section 845.6 requires that the public entity know or have "reason to know that the prisoner is in need of immediate medical care. . . ." In *Zeilman* v. *County of Kern*, *supra*, the prisoner's medical problems were readily apparent. Not so here. While incarcerated at Chino and Corcoran, appellant was able to walk and complained that his ankle was tender. Doctor Portales, however, testified that a patient suffering from a ruptured Achilles would be screaming in pain and have to use a wheelchair or crutches. No medical testimony was presented to the contrary.

We reject the argument that the State knew or had reason to know that appellant's medical condition required surgery. No triable facts were presented that the State knew or had reason to know that the medical care provided at Chino and Corcoran was so deficient that it was tantamount to no medical care. An orthopedic specialist diagnosed the medical problem almost a year after the injury. Notice could not be imputed to the State based on medical hindsight. There is no merit to the argument that the misdiagnosis triggered section 845.6 liability based on the alleged failure to summon reasonable medical care.

*Zeilman* v. *County of Kern*, *supra*, is also distinguishable because medical care was provided each time appellant sought medical attention at Chino and Corcoran. Appellant, however, argues that section 845.6 imposed a duty to monitor the quality of care provided. We are unpursuaded. Prison authorities do not have the medical training to know whether a prisoner's medical condition has been properly diagnosed and treated. Where, as here, the prisoner is dissatisfied with the treatment provided, section 845.6 requires that he file a negligence action against the medical provider. (*Nelson* v. *State of California*, *supra*, 139 Cal.App.3d 72, 78.)

█ Appellant also challenges the order sustaining the demurrer of the state employees. The trial court ruled that the negligence action was barred because appellant failed to comply with the claims presentation requirement. (§§ 911.2, 950.2.) We agree.

█ It is well settled that a government claim must be filed with the public entity before a tort action is brought against the public entity or public employee. (§ 950.2; *Fisher* v. *Pickens* (1990) 225 Cal.App.3d 708, 718 [275

Cal.Rptr. 487]; *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125].) "[E]ach cause of action must [be] reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim. [Citations.]" (*Nelson* v. *State of California, supra,* 139 Cal.App.3d 72, 79.)

 Here the government claim stated that appellant was refused medical treatment. The claim stated in pertinent part: "Claimant was playing basketball and injured his leg. Jail medical personnel refused to treat him. He was then shipped to the State Facility at Chino where his leg was X-rayed, but they refused to treat him. He was ultimately sent to Corcoran where, again, treatment was refused."

On January 15, 1991, the State Board of Control requested that appellant's counsel provide additional information. In a July 1, 1991, letter, counsel responded: "[I]t is claimant's position that he was suffering from an obvious and debilitating injury to his leg and foot, which conditions would dictate that a reasonably prudent person summon appropriate medical treatment for him. *Such medical treatment was not summoned and was, in fact, refused when requested by Mr. Watson.*" (Italics added.)

The government claim was based on the theory that the State refused to provide medical care and no care was provided. The first amended complaint, however, alleged that respondents "failed to provide Plaintiff with appropriate and adequate medical treatment for his injuries . . . ." The trial court determined that the variance between the claim and first amended complaint was fatal. We agree. (*Donohue* v. *State of California* (1986) 178 Cal.App.3d 795, 802-804 [224 Cal.Rptr. 57]; *Fall River Joint Unified School Dist.* v. *Superior Court* (1988) 206 Cal.App.3d 431, 434 [253 Cal.Rptr. 587].)

Appellant's case is controlled by *Nelson* v. *State of California, supra,* 139 Cal.App.3d 72. There, the plaintiff was incarcerated in the San Diego County jail and transferred to the California Institute for Men in Chino. While at Chino, Nelson complained of various medical problems including wieght loss, thirst, and leg pain. The physicians who examined and treated Nelson were state employees.

Nelson became diabetic and sustained injuries to his leg. A government claim was presented stating that the injuries were caused by " '. . . the

failure of the Department of Corrections to diagnose and treat or allow claimant to maintain his ongoing medications.' " (139 Cal.App.3d at p. 80.) The claim further stated that ". . . claimant advised medical personnel in the employ of the State of California that he was suffering from arthritic and hyperglycemic conditions and was required to ingest medication . . . . A physician employee of the State Department of Corrections . . . discounted claimant's position . . . . As a result of the failure of the Department of Corrections to diagnose and treat or allow claimant to maintain his ongoing medications, claimant became diabetic and has suffered permanent nerve root damage to his left leg and foot." (*Id.*, at p. 82.)

The claim was rejected by the State. Nelson thereafter filed a complaint alleging that the State and prison medical staff breached " '. . . a duty to plaintiff to summon immediate and competent medical attention.' " (139 Cal.App.3d at p. 76.) The trial court determined that the variance was fatal and sustained State's demurrer without leave to amend.

The Court of Appeal affirmed and held that the failure to summon medical care is not the same as the failure to provide adequate care. "[T]he two are *not* equivalent. Once a practitioner has been summoned to examine and treat a prisoner, he or she is under a duty to exercise that degree of diligence, care, and skill such as is ordinarily possessed by other members of the profession. Failure to do so is malpractice. [Citation.] Failure of a practitioner to prescribe or provide necessary medication or treatment to one he or she has been summoned to assist is a breach of such duty and as such is also medical malpractice and clearly, as a matter of the plain meaning of the statutory language, cannot be characterized as a failure to summon medical care. [¶] Based upon this analysis and particularly our legal interpretation of the statute noted [§ 845.6], we hold further that plaintiff's claim, as a matter of law, failed to recite the requisite facts to support the theory and the allegations of the first amended complaint. The State's demurrer thereto was accordingly rightly sustained." (139 Cal.App.3d at p. 81.)

The same result follows here. Appellant cannot save the action based on the theory that he substantially complied with the claims statute. (E.g., *Phillips* v. *Desert Hospital Dist.* (1989) 49 Cal.3d 699, 711 [263 Cal.Rptr. 119, 780 P.2d 349] [notice of intent to commence medical malpractice action satisfied claims presentation requirement].) The doctrine of substantial compliance does not apply where the claim fails to set forth the factual basis for recovery. (*Donohue* v. *State of California, supra,* 178 Cal.App.3d 795, 804-805.) The trial court properly concluded that the first amended complaint was barred by the claims presentation statute. (*Nelson* v. *State of California, supra,* 139 Cal.App.3d 72, 80-81.)

The judgment is affirmed with costs to respondents.

Stone (S. J.), P. J., and Gilbert, J., concurred.