Filed 5/13/13  Durio v. Cal. Dept. of Corrections CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SHALAY DURIO, | D061914 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. ECU06360) |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Imperial County, Jeffrey B. Jones, Judge.  Affirmed.

Barrera & Associates and Patricio T.D. Barrera for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Jonathan L. Wolff, Senior Assistant Attorney General, Vickie P. Whitney and Christopher H. Findley, Deputy Attorneys General, for Defendant and Respondent.

I.

INTRODUCTION

Christopher Durio's (Christopher) daughter, Shalay Durio (Shalay),[1] filed a second amended complaint containing claims for wrongful death, negligence, and battery against the California Department of Corrections and Rehabilitation (the Department). In the second amended complaint, Shalay alleged that in June 2010, the Department's correctional officers attempted to end an altercation between Christopher and a cellmate by negligently spraying pepper spray in Christopher's face. Shalay further alleged that immediately following the incident, the Department's officers knew or had reason to know that Christopher was in need of immediate medical care, that they failed to summon such care, and that Christopher died as a result. Shalay claimed that the Department was liable for failing to summon medical care pursuant to Government Code section 845.6.[2]

The Department filed a motion for summary judgment in which it maintained that undisputed evidence established that it was immune from all of Shalay's claims as a matter of law. The trial court granted the Department's motion and entered judgment in

---

[1]    We refer to the decedent and the plaintiff by their first names for purposes of clarity.

[2]    Unless otherwise specified, all subsequent statutory references are to the Government Code.

As discussed in greater detail in part III, *post*, section 845.6 provides that the Department may be liable for failing to summon medical care under certain specified circumstances.

its favor.  Shalay appeals, claiming that the trial court erred in granting summary judgment.  We affirm.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *The operative complaint*

In September 2011, Shalay filed a second amended complaint.  The second amended complaint contained the following allegations:

> "On or about June 15, 2010, Defendants,[3] by and through their correctional officers acting under defendants' supervision, attempted to end an altercation involving [Christopher] and a cellmate. Defendants by and through their correctional officers acting under defendants' supervision, ended the altercation by negligently applying pepper spray to [Christopher's] face.  [Christopher] suffered from 'shortness of breath' and/or asthma and should not have been pepper sprayed. . . . [¶] . . . Immediately following the pepper spray incident, defendants' agents and employees knew or had reason to know that Christopher . . . was in need of immediate medical care.  Defendants failed to take reasonable action to summon medical care. [¶] . . . On June 15, 2010, after being pepper sprayed and complaining of difficulty breathing, Christopher . . . passed away at defendants' facility and was pronounced dead. Defendants' agents and employees were negligent and responsible for [Christopher's] death under [section] 845.6 by their delays in administering medical care to [Christopher], failing to summon immediate and proper medical care, and administering improper care to [Christopher]."

Shalay incorporated these allegations in claims for wrongful death, negligence, and battery.  In her prayer for relief, Shalay sought money damages.

---

3      Although not contained in the record, it is undisputed that in an earlier complaint Shalay had named the warden of the prison at which Christopher was incarcerated as a defendant.  It appears that the warden filed a demurrer and was dismissed from the action.  The warden is not a party to this appeal.

3

B.      *The Department's motion for summary judgment*

The Department filed a motion for summary judgment.  In its motion, the Department argued that the undisputed evidence established the following facts relevant to Shalay's claims.

The Department is a public entity and Christopher was a prisoner in a correctional facility managed by the Department.  Shortly after 2:30 a.m. on the morning of June 15, 2010, a correctional officer, Officer F. Alvarez, applied a spray containing oleoresin capsicum (O.C. spray) into Christopher's cell to break up a fight between Christopher and his cellmate.  At 2:40 a.m., after securing Christopher, a sergeant summoned prison medical staff to assist in the decontamination of Christopher from the O.C. spray.  An officer led Christopher to a nearby shower to decontaminate.  Christopher stood in the shower for a few minutes, and then lay down in the shower.

At 2:45 a.m., Christopher informed a correctional officer that he was having "difficulty breathing" and was experiencing "shortness of breath."  Also at approximately 2:45 a.m., a registered nurse, C. Ramirez, arrived at the scene.  Nurse Ramirez requested that an officer move Christopher from the shower so that Nurse Ramirez could examine him.  As Christopher was moving out of the shower, he complained of difficulty breathing, but was able to walk under his own power.  During the initial portion of Nurse Ramirez's examination, Christopher appeared to be breathing normally and had a pulse within the normal range.

At 3:11 a.m., Christopher stopped breathing and became unresponsive.  At 3:11 a.m., Nurse Ramirez started performing cardiopulmonary resuscitation (CPR) on him,

4

and requested that an ambulance be called. An ambulance arrived at the prison between 3:40 and 3:45 a.m. The ambulance left the prison at approximately 4:00 a.m. A doctor at a local hospital pronounced Christopher dead at 4:30 a.m.

The Department argued that the undisputed evidence demonstrated that it was immune from all of Shalay's claims as a matter of law. The Department contended that pursuant to section 844.6, it could not be found liable for any of Shalay's claims arising from a Department employee's application of O.C. spray.[4] The Department also contended that the undisputed evidence described above demonstrated as a matter of law that the Department could not be found liable for failing to summon medical care pursuant to section 845.6. In support of this contention, the Department argued that a sergeant summoned medical care before Christopher exhibited symptoms that demonstrated a need for immediate medical care, the responding nurse provided Christopher with medical treatment, and prison staff summoned an ambulance when Christopher appeared to be in "actual distress."

The Department supported its motion with a separate statement of facts and declarations from Officer Alvarez, the sergeant who initially responded to the scene of the fight and summoned medical assistance, another officer who led Christopher to the shower and assisted in moving Christopher from the shower, and Nurse Ramirez, all of

---

[4]     As discussed in greater detail in part III, *post*, section 844.6 provides that public entities are not liable for any injury to a prisoner unless liability is imposed by statute.

whom are Department employees. The Department also offered various reports that these employees had prepared near the time of the incident.[5]

Shalay filed an opposition in which she argued that a jury could determine that the Department had failed to summon medical care in light of undisputed evidence that the Department never telephoned a prison doctor, who was on call but not at the prison at the time of the incident. Shalay argued that a doctor could have provided life-saving care such as administering medication, performing an airway intubation, or using a defibrillator. Shalay further argued that the court should reject any argument that the Department had met its duty to summon care by "having two nurses[6] on site providing CPR," because the "nurses were inadequately prepared to treat [Christopher] for cardiac arrest . . . ." Shalay also argued that the Department could be found liable for injuries arising from the application of the O.C. spray, under the theory that the Department owed a duty of care to Christopher in light of the " 'special relationship between jailer and prisoner.' "

Shalay supported her opposition with a separate statement of facts and numerous exhibits, including portions of the deposition transcripts of several Department employees.

---

[5]    The Department also requested that the court take judicial notice of its existence as a public entity under section 12838 and Christopher's death certificate.

[6]    In the opposition to the motion for summary judgment, Shalay offered excerpts of the deposition of a nurse, Nurse T. Vea, who assisted Nurse Ramirez in treating Christopher after he became unresponsive.

C.      *The trial court's ruling and the appeal*

After further briefing and a hearing, the trial court granted the Department's

motion for summary judgment.  In its order, the court stated in relevant part:

> "[T]he Court finds that there is no triable issue of material fact, and
> that [the Department] is entitled to judgment as a matter of law on all
> causes of action on the grounds that (1) [the Department] is immune
> from liability for injuries to prisoners under Government Code
> section 844.6; (2) [the Department] is immune from liability for
> failure to furnish or obtain medical care under Government Code
> section 845.6; and (3) there is no dispute of material fact that [the
> Department] took reasonable action to summon medical care within
> the meaning of Government Code section 845.6.  Specifically, the
> court finds that [the Department] submitted evidence showing that it
> summoned an ambulance within a reasonable period of time after
> inmate Christopher Durio lost consciousness.  Plaintiff did not
> submit evidence to refute the time frame provided by [the
> Department] and did not submit evidence that the prison doctor
> could have arrived more quickly than the ambulance had he been
> called."

The trial court entered judgment in favor of the Department, from which Shalay

time appeals.

III.

DISCUSSION

*The trial court properly granted the Department's motion for summary judgment*

Shalay claims that the trial court erred in concluding that the Department

established a complete immunity defense with respect to each of Shalay's causes of

action.

7

A.      *Governing law*

    1.      *The law governing summary judgment*

A moving party is entitled to summary judgment when the party establishes that it is entitled to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant may make this showing by demonstrating that the plaintiff cannot establish one or more elements of all of his causes of action, or that the defendant has a complete defense to each cause of action. (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466.)

In reviewing a trial court's ruling on a motion for summary judgment, the reviewing court makes " 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law. [Citations.]' [Citation.]" (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1143.)

    2.      *General principles of law governing the Department's immunity defenses*

        a.      *Public entity immunity*

Unless provided by statute, California public entities are not liable for tort claims seeking money damages. (§ 815.)[7]

Section 815 provides in relevant part:

_____

[7]     Section 814 explains that the provisions contained in sections 814 through section 895 do not apply to contractual claims or to claims seeking "relief other than money or damages." (§ 814 ["Nothing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee"].)

8

"Except as otherwise provided by statute:

"(a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."

Thus, "sovereign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute." (*Cochran v. Herzog Engraving Co*. (1984) 155 Cal.App.3d 405, 409.)

    b.  *The immunity of public entities for correctional activities*

Sections 844 through 846 codify several specific provisions applicable to correctional institutions. Of particular import to this case are sections 844.6 and 845.6.

    i.  *Section 844.6*

Section 844.6, subdivision (a)(2) broadly states that public entities are not liable for any injury to a prisoner unless liability is imposed by statute. The statute provides in relevant part:

"(a) Notwithstanding any other provision of this part, except as provided in this section and in . . . [section] 845.6 . . . , a public entity is not liable for:

"[¶] . . . [¶]

"(2) An injury to any prisoner."

Section 844.6 also makes clear that this provision does not immunize a public *employee* from liability for injury proximately caused by the employee's negligent conduct, and specifies that a public entity has a duty to pay a judgment based on a medical malpractice claim against a public employee:

9

"(d) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission. The public entity may but is not required to pay any judgment, compromise or settlement, or may but is not required to indemnify any public employee, in any case where the public entity is immune from liability under this section; except that the public entity shall pay, as provided in Article 4 (commencing with Section 825) of Chapter 1 of this part, any judgment based on a claim against a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state for malpractice arising from an act or omission in the scope of his employment, and shall pay any compromise or settlement of a claim or action, based on such malpractice, to which the public entity has agreed." (§ 844.6, subd. (d).)

ii. *Section 845.6*

The first sentence of section 845.6 reaffirms that a public entity is immune from liability for injuries caused by the failure to furnish or obtain medical care for prisoners, but states that a public entity is liable for the failure to summon medical care under certain narrowly defined circumstances. The statute provides in relevant part:

"Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but . . . a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." (§ 845.6)

Section 845.6 also makes clear that this provision does not immunize a public *employee* from a medical malpractice claim or excuse a public entity from its duty to indemnify under section 844.6:

"Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by

10

malpractice or exonerates the public entity from its obligation to pay any judgment, compromise, or settlement that it is required to pay under subdivision (d) of Section 844.6."

B.     *The trial court properly concluded that the Department established that it is immune as a matter of law with respect to each of Shalay's claims*

1.     *The Department is immune as a matter of law from Shalay's wrongful death claim*

Shalay contends that the trial court erred in concluding that the Department established as a matter of law that it could not be held liable pursuant to section 845.6 for her wrongful death claim.

a.     *Applicable case law*

In *Castaneda v. Department of Corrections and Rehabilitation* (2013) 212 Cal.App.4th 1051, 1070 (*Castaneda*), the Court of Appeal described the scope of the duty to summon immediate medical care provided in section 845.6. The *Castaneda* court noted that the statute "creates . . . limited public-entity liability when: (1) the public employee 'knows or has reason to know [of the] need,' (2) of '*immediate* medical care,' and (3) 'fails to take reasonable action to *summon* such medical care.' (§ 845.6, italics added.)" (*Castaneda, supra*, at p. 1070.) The *Castaneda* court also explained that "[s]ection 845.6 is very narrowly written to authorize a cause of action against a public entity for its employees' failure to summon immediate medical care only, not for certain employee's malpractice in providing that care." (*Castaneda, supra*, at p. 1070.) The limited duty provided in section 845.6 is reflected in the structure and text of the statute:

"A narrow reading of section 845.6 is also compelled as a matter of statutory interpretation. First, the duty to summon is presented as the exception to the broad, general immunity for failing to furnish or

11

provide medical care.  Second, section 845.6 imposes the duty to summon on 'public employees' generally, not medical care providers in particular.  Many such public employees are '[p]rison authorities [who] do not have the medical training to know whether a prisoner's medical condition has been properly diagnosed and treated.' ([*Watson v. State* (1993) 21 Cal.App.4th 836, 843 (*Watson*)].)  The Legislature could not have contemplated imposing a duty to do more than to *summon* medical care as it imposed that duty on 'public employees,'  such as prison authorities, generally."[8]  (*Castaneda, supra*, 212 Cal.App.4th at p. 1071, fn. omitted.)

The *Castaneda* court also explained that California courts have concluded that the failure of a health care professional who is *summoned* to provide medical assistance to a prisoner to thereafter *provide* adequate treatment to the prisoner does not come within the scope of the duty set forth in section 845.6:

"The distinction between failure to summon medical care—for which the State can be held liable under section 845.6—on the one hand, and negligence in providing care—for which the State is immune—on the other hand, was addressed in *Nelson v. State of California* [(1982)] 139 Cal.App.3d 72 [(*Nelson*)].  There, the plaintiff was incarcerated when he complained of various medical problems that were symptoms of diabetes.  (*Id*. at p. 75.)  He filed a tort claim reciting the ' "failure of the Department of Corrections to diagnose and treat or allow claimant to maintain his ongoing medications." '  ( *Id.* at p. 80.)  The plaintiff's ensuing complaint was based on the failure to summon immediate, competent medical care under section 845.6.  ([*Nelson*]*, supra,* at p. 78.)  *Nelson* held 'as a matter of statutory interpretation, that the act of a doctor or other such professional who, in the course of treatment of a prisoner, fails to prescribe and/or provide the correct medication is [not] the legal equivalent to a failure to summon medical care as set forth in [§ 845.6].'  (*Id*. at pp. 80–81.)  '*Once a practitioner has been*

---

[8]     In the footnote omitted from this quotation, the *Castaneda* court explained that the Government Code "does impose liability on health care providers for injury proximately caused by malpractice," but that Castaneda had "sued the employee physicians and nurses in federal court, not in this state court action." (*Castaneda, supra*, at p. 1071, fn. 9.) Thus, as in this case, the Department was the only defendant in *Castaneda*.

*summoned* to examine and treat a prisoner, he or she is under a duty to exercise that degree of diligence, care, and skill such as is ordinarily possessed by other members of the profession.  Failure to do so is malpractice.  [Citation.]  *Failure of a practitioner to prescribe or provide necessary medication or treatment to one he or she has been summoned to assist* is a breach of such duty and as such *is also medical malpractice and* clearly, as a matter of the plain meaning of the statutory language, *cannot be characterized as a failure to summon medical care*.'  (*Id*. at p. 81, italics added.)

"*Watson, supra,* 21 Cal.App.4th 836, also considered the parameters of governmental liability under section 845.6.  *Watson* determined section 845.6 'confers a broad general immunity on the public entity' and the duty to 'summon' medical care under section 845.6 neither encompasses a duty to provide reasonable medical care, nor includes a concomitant duty to assure that prison medical staff properly diagnose and treat the medical condition, nor imposes a duty to monitor the quality of care provided.  (*Watson, supra,* at pp. 841–843.)"  (*Castaneda, supra*, *supra*, 212 Cal.App.4th at pp. 1071-1072.)

The *Castaneda* court acknowledged that in *Jett v. Penner* (9th Cir. 2006) 439 F.3d 1091 (*Jett*), the United States Court of Appeals for the Ninth Circuit held that " ' "immediate medical care" as used in the statute *includes both diagnosis and treatment* and . . . the need for "immediate medical care" can arise *more than once in relation to an ongoing serious medical condition. . . .*"  (*Castaneda, supra*, 212 Cal.App.4th at p. 1073, quoting *Jett*, *supra*, at p. 1099.)  However, the *Castaneda* court expressly rejected the *Jett* court's reasoning:

"[T]he Ninth Circuit's application of section 845.6 ignores California authority interpreting that statute.  California courts hold the failure to prescribe necessary medication or, once summoned to provide treatment, to ensure proper diagnosis, or to monitor the progress of an inmate that the public employee has been summoned to assist, are issues relating to the manner in which medical care is *provided,* and do not subject the State to liability under section 845.6 for failure to

13

*summon.* ([*Nelson*]*, supra,* 139 Cal.App.3d at pp. 80–81; *Watson, supra,* 21 Cal.App.4th at pp. 841–843.)

"*Jett* also contradicts the Legislature's determination, in enacting section 845.6, not to require follow-up or monitoring of medical care. 'As the bill [for section 845.6] was originally introduced the public employee was required to "see" to it that a prisoner needing medical care received it. As amended he was required only to "summon" medical care.' [Citation.]" (*Castaneda, supra*, 212 Cal.App.4th at p. 1074.)

Applying *Nelson* and *Watson*, the *Castaneda* court considered whether there was sufficient evidence in the record in that case to support a verdict against the Department for failing to summon medical care pursuant to section 845.6. The court concluded that the Department could not be found to have breached its duty under section 845.6 based on evidence that a nurse and a doctor working for the Department had failed to ensure that Castaneda receive certain diagnostic testing necessary to detect cancer. (*Castaneda, supra*, 212 Cal.App.4th at p. 1072.) In reaching this conclusion, the *Castaneda* court reasoned:

"On this record, the State summoned medical care for Castaneda. Indeed, it did more than summon, it treated him. Both Dr. Leong and Nurse Pasha assessed him; both included cancer as part of their differential diagnosis; both diagnosed his condition; and both *referred* him for further treatment, namely, medication and a biopsy. Under *Nelson* and *Watson,* the failure of these two public employees to provide further treatment, or to ensure further diagnosis or treatment, or to monitor Castaneda or follow up on his progress, are all facts which go to the reasonableness of the medical care provided, but do not constitute a failure to *summon* medical care. (*Watson, supra,* 21 Cal.App.4th at pp. 841–843;[*Nelson*]*, supra,* 139 Cal.App.3d at pp. 80–81.)" (*Castaneda, supra*, at p. 1072.)

14

b.	*Application*

In her wrongful death claim, Shalay incorporated allegations that the Department failed to take reasonable action to summon medical care on Christopher's behalf and that this failure caused Christopher's death.  Shalay further alleged that the Department was liable pursuant to section 845.6.

As described in detail in part II, *ante*, in moving for summary judgment, the Department presented evidence that its employees summoned Nurse Ramirez prior to Christopher exhibiting any symptoms that would lead a reasonable person to know that he was in need of immediate medical care.  Within minutes of being summoned, Nurse Ramirez responded to the scene and began providing medical attention to Christopher.  As Christopher's condition worsened and he stopped breathing, Nurse Ramirez began performing CPR, and requested that an ambulance be called.  Shalay failed to present any evidence that contradicted the Department's evidence in this regard.

In light of the case law discussed above, the Department established as a matter of law that it could not be found liable for failing to *summon* medical care under section 845.6.  (See *Nelson, supra,* 139 Cal.App.3d at p. 81; *Castaneda, supra*, 212 Cal.App.4th at p. 1072 [applying *Nelson* and concluding Department was immune as a matter of law from claim that nurse summoned to provide medical treatment failed to provide adequate treatment].)  Any evidence that Nurse Ramirez failed to properly *provide* adequate treatment to Christopher cannot support a claim for fail to *summon* medical care pursuant to section 845.6.  (*Castaneda, supra,* at p. 1074 ["Once summoned, the quality of medical care is a matter of medical policy and practice, imposing on medical practitioners a duty

15

to exercise that degree of diligence, care, and skill possessed by other members of the profession, but it is not a violation of the employee's obligation to summon medical care under section 845.6"].)

Even assuming that the Department had not satisfied its duty under section 845.6 by summoning Nurse Ramirez, as noted above, the undisputed evidence also established that as soon as Christopher stopped breathing and became unresponsive, Nurse Ramirez started performing CPR and requested an ambulance, and that someone at the prison called for an ambulance. On these facts, no reasonably jury could find that the Department or its employees failed to summon medical care under section 845.6. (*Castaneda, supra*, 212 Cal.App.4th at p. 1070, quoting § 845.6 [public entity can be found liable for breach of duty to summon under section 845.6 only where "(1) the public employee 'knows or has reason to know [of the] need,' (2) of '*immediate* medical care,' and (3) 'fails to take reasonable action to *summon* such medical care.' "])

Shalay argues that at 2:45 a.m., upon the first signs that Christopher was having difficulty breathing, correctional employees should have summoned a prison doctor, who was on call but not physically at the prison, and that their failure to do so constitutes a breach of the duty to take reasonable action to summon medical care within the meaning of section 845.6. We are not persuaded. In this case, it is undisputed that, *prior* to 2:45 a.m., a correctional officer had already summoned medical care and that, as of 2:45 a.m., Nurse Ramirez was examining Christopher and providing medical care. For the reasons stated above, this evidence establishes as a matter of law that the Department cannot be held liable for failing to summon medical care under section 845.6.

16

Shalay cites two cases, *Jett, supra,* 439 F.3d 1091, and *Flores v. Natividad Medical Center* (1987) 192 Cal.App.3d 1106 (*Flores*), in which courts have concluded that a treating doctor's failure to summon *additional* medical care for a prisoner may constitute evidence upon which a section 845.6 claim may be based. However, for reasons discussed below, neither of the cases that Shalay cites supports reversal in this case.

In *Jett*, the Ninth Circuit concluded that evidence that a doctor failed to summon additional medical care to set and cast a prisoner's fractured thumb could support a verdict in the prisoner's favor under section 845.6. (*Jett, supra*, 439 F.3d at p. 1099.) As discussed previously, the *Jett* court reasoned, "the term 'immediate medical care' as used in the statute includes both diagnosis and treatment." (*Ibid*.)

In *Flores*, the plaintiff sought to recover for injuries that he sustained after prison doctors failed to transfer him from a prison infirmary to a hospital for treatment related to an ulcer. (*Flores, supra,* 192 Cal.App.3d at pp. 1112-1113.) In describing the nature of the plaintiff's claim against the State of California for failing to summon medical aid pursuant to section 845.6, the *Flores* court noted, "Although plaintiff argued to the jury that the doctors were negligent and liable for malpractice in their treatment of plaintiff and in failing to transfer him to the hospital immediately, he also argued that the State was liable for the doctors' failure to transfer him, such failure being equivalent to a failure-to-summon medical aid under the statute." (*Flores, supra,* at p. 1115.) The Court of Appeal concluded that the $250,000 limitation on noneconomic damages embodied in the Medical Injury Compensation Reform Act (MICRA) (Civ. Code, § 3333.2 ) did not

17

apply to the plaintiff's claim. (*Flores, supra*, at p. 1114. ) The *Flores* court reasoned that because the State was immune from a vicarious liability claim against it premised on its employee's commission of medical malpractice, the "the failure-to-summon theory" was "the only proper basis for recovery against the State." (*Id*. at p. 1116; see also *ibid*. ["[a]lthough the failure to summon assistance could have provided a basis for the finding of professional negligence against the doctors, this does not render the true nature of the action against the State one for professional negligence"].)

We acknowledge the tension between the reasoning of the courts in *Castaneda*, *Nelson,* and *Watson,* on the one hand, with that of the courts in *Jett* and *Flores* on the other, with respect to whether the State may be found liable under section 845.6 based on the alleged failure of a medical practitioner who is treating a prisoner to seek additional medical care for the prisoner. (Compare, e.g., *Nelson, supra*, 139 Cal.App.3d at p. 81 ["Failure of a practitioner to prescribe or provide necessary medication or treatment to one he or she has been summoned to assist . . . clearly, as a matter of the plain meaning of the statutory language, cannot be characterized as a failure to summon medical care"] with *Flores, supra*, 192 Cal.App.3d at p. 1117 ["It would be at least . . . anomalous, we think, to insulate the State from liability simply because, fortuitously, the employees who failed to summon assistance were doctors rather than other prison personnel"].) However, for the reasons summarized in *Castaneda*, we agree that section 845.6 provides for liability only where a public employee fails to *summon* medical care, and does not

18

extend to the summoned employee's *treatment decisions* with respect to how to provide such care.[9]

In any event, in this case, even assuming we were to follow *Jett* and *Flores* and conclude that the Department did not demonstrate as a matter of law that it satisfied its duty under section 845.6 by summoning Nurse Ramirez, for the reasons stated above, we conclude that no reasonable jury could find that Nurse Ramirez failed to summon medical care.[10] Shalay is therefore not entitled to reversal of the court's judgment based on the reasoning of *Jett* or *Flores*.[11]

---

[9] The *Castaneda* court expressly considered and rejected the *Jett* court's reasoning on this issue (*Castaneda, supra*, 212 Cal.App.4th at p. 1073), and neither *Jett* nor *Flores* applied *Nelson* or *Watson* with respect to this issue.

[10] As noted previously, the undisputed evidence establishes that Nurse Ramirez started performing CPR and summoned an ambulance as soon as Christopher stopped breathing and became unresponsive.

[11] Shalay also argues that in ruling on the Department's motion for summary judgment, the trial court erred in considering evidence favoring the non-moving party. In support of this contention, Shalay cites to a series of immaterial factual issues including "Officer Alvarez's actions during the O.C. Spray incident," Nurse Ramirez's deposition testimony concerning his participation in a case study after the incident, and the Department's initial classification of the incident as a homicide. None of Shalay's arguments with respect to such evidence demonstrate the issuance of a genuine issue of a material fact warranting reversal of the court's summary judgment.

Accordingly, we conclude that the Department established as a matter of law that it is immune from Shalay's wrongful death claim premised on the Department's alleged "fail[ure] to take reasonable action to summon medical care."[12]

2. *The Department is immune from Shalay's negligence and battery claims*

Shalay contends that the trial court erred in concluding that the Department established as a matter of law that it could not be held liable with respect to Shalay's negligence and battery claims premised on Officer Alvarez's act in spraying Christopher with O.C. spray.

Citing *Giraldo v. California Department of Corrections and Rehabilitation* (2008) 168 Cal.App.4th 231, 250 (*Giraldo*), Shalay argues, "there is a 'special relationship between jailer and prisoner, imposing on the former a duty of care to the latter.' " Shalay contends that Officer Alvarez breached this duty by spraying Christopher with O.C. spray and argues that "[p]ublic employees and public entities are liable for injuries from their negligent acts or omissions to the same extent as a private person, *unless a statutory exception applies*." (Italics added.)

---

12     Although Shalay's brief focuses on the Department's alleged failure to *summon* medical care, in her second amended complaint, Shalay's wrongful death claim also incorporated the allegation that the Department "failed to *provide* adequate treatment." (Italics added.)

    To the extent that Shalay's wrongful death is claim is premised on the Department's alleged failure to *provide* adequate treatment, the Department is immune from such a claim as a matter of law. (See *Castaneda, supra*, 212 Cal.App.4th at p. 1071 [noting that the Department is immune from medical malpractice claims]; § 845.6 "Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish . . . medical care for a prisoner in his custody"; § 844.6 "a public entity is not liable for: [¶] . . . [¶] An injury to any prisoner"].)

20

A statutory exception *does* apply in this case. "Although a public entity may be vicariously liable for the acts and omissions of its employees ([§] 815.2), that rule does *not* apply in the case of injuries to prisoners." (*Lawson v. Superior Court* (2010) 180 Cal.App.4th 1372, 1383, citing § 844.6.) Section 844.6 makes clear that the Department is not liable for any injuries to a prisoner unless liability is imposed by certain statutory provisions, none of which Shalay contends applies. (§ 844.6 ["except as provided in this section and in Sections 814, 814.2, 845.4, and 845.6, or in Title 2.1 (commencing with Section 3500) of Part 3 of the Penal Code,[13] a public entity is not liable for: [¶] . . . [¶] An injury to any prisoner"]; see also § 815, subd. (b) ["The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part"].) Thus, even assuming that Officer Alvarez breached a duty owed to Christopher under *Giraldo,* the Department is immune from Shalay's negligence and battery causes of action.[14]

---

13    Shalay does not contend that she may maintain her negligence or battery claims pursuant to any of these provisions.

14    Due to the procedural context in which *Giraldo* arose—the review of an order sustaining the joint demurrer of the Department and several of its employees to a negligence cause of action based on an asserted lack of duty—the *Giraldo* court had no occasion to address, and did not address, a public entity's immunity to injury to prisoners under section 844.6. (See *Giraldo, supra*, 168 Cal.App.4th at p. 237.)  Although in *Giraldo*, the Department argued in its demurrer that it was immune from liability (*id.* at p. 241), the trial court did not sustain the demurrer on this ground (*id.* at p. 242), and the *Giraldo* court expressly declined to consider the "alternative grounds raised in the demurrer." (*Id.* at p. 252.)  Instead, the court remanded the matter for "whatever further consideration [of such alternative grounds] is appropriate." (*Ibid.*)  It is thus clear that the *Giraldo* court did not address the immunity defense that the Department asserts in this case.

Accordingly, we conclude that the Department established its immunity defense as a matter of law, and that the trial court therefore properly granted summary adjudication in favor of the Department on Shalay's negligence and battery claims.

IV.

DISPOSITION

The judgment is affirmed.

_____

AARON, J.

WE CONCUR:

_____

BENKE, Acting P. J.

_____

HALLER, J.