Filed 3/13/23

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEVEN MALEAR,<br><br>    Plaintiff and Appellant,<br>v.<br><br>STATE OF CALIFORNIA et al.,<br><br>    Defendants and Appellants. | A163146<br><br>(Marin County<br>Super. Ct. No. CIV-2002017) |

This putative class action arises out of the transfer of inmates from the Chino Institute for Men (CIM) to San Quentin State Prison (San Quentin) in May of 2020, which allegedly led to a severe outbreak of COVID-19 at the prison.  Plaintiff Steven Malear, a San Quentin inmate who was diagnosed with COVID-19, filed a complaint with a cause of action alleging that defendants State of California and California Department of Corrections and Rehabilitation are responsible for the harm caused by their failure to take reasonable action to summon medical care for prisoners who were in immediate need of it.

The trial court sustained defendants' demurrer to this cause of action without leave to amend, holding that Malear failed to comply with the claim presentation provisions of the Government Claims Act (Gov. Code, §§ 810 et

---

\*    Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts B and C of the Discussion.

1

seq., 945.4).[1] In so holding, the court found that Malear had prematurely filed this lawsuit before the rejection of his government claim and that he could not cure this defect by filing an amended complaint after denial of the claim.[2]

We reverse the judgment. In the published portion of this opinion, we conclude the trial court erred in sustaining the demurrer for Malear's failure to allege strict compliance with the claim presentation requirement of the Government Claims Act. The record establishes that, even though Malear initiated this lawsuit before the public entity defendants denied his government claim, Malear subsequently filed an amended complaint as of right after the claim was denied and before defendants were served with the original complaint or appeared in the action. The amended complaint alleged defendants' denial of his claim. On this record, Malear has established substantial compliance with the statutory claim presentation requirement, and the order sustaining defendants' demurrer based on the lawsuit's premature filing cannot stand.

In the unpublished portion of this opinion, we determine that defendants have not established an alternative basis for affirming the judgment at this early stage in the litigation. That is, assuming the truth of the material allegations in the amended complaint, we conclude Malear has

---

[1]     All further unspecified section references are to the Government Code. Following the example of the California Supreme Court, we will refer to the statute as the "Government Claims Act" or "the Act" rather than its informal title, the "Tort Claims Act." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 741–742 (*City of Stockton*).)

[2]     The trial court overruled defendants' demurrer to Malear's second cause of action for negligence against unnamed individual defendants, and also denied defendants' motion to strike the class allegations. Neither of these rulings is at issue in this appeal.

2

stated facts sufficient to constitute a cause of action against defendants for failure to summon medical care under section 845.6.  Moreover, the amended complaint does not disclose the existence of a statutory immunity defense as a matter of law.

FACTUAL AND PROCEDURAL BACKGROUND

## A. Allegations

In the operative second amended complaint (complaint), Malear makes the following allegations.

On May 28, 2020, defendants began transferring approximately 194 inmates from CIM to San Quentin.  The CIM transferees were at risk of developing serious symptoms of COVID-19 (i.e., persons over the age of 65 and/or with underlying medical conditions), and although they had tested negative two weeks prior, several had COVID-19 at the time of the transfer, including some who exhibited symptoms before exiting the transfer bus at San Quentin.  San Quentin had no cases of COVID-19 among its prisoner population at the time, but approximately one month following the transfer, at least 1,400 inmates, including Malear, were diagnosed with COVID-19, and several inmates have since died from it.

Individuals acting within the scope of their employment with defendants allegedly knew or had reason to know that San Quentin inmates were at immediate risk of being infected with COVID-19 upon the arrival of the CIM transferees.  Defendants' employees failed to take reasonable action to summon immediate medical care in the form of:  timely screening and/or testing of CIM transferees for COVID-19 prior to transfer; timely screening and/or testing of class members for COVID-19 prior to the CIM transferees' arrival at San Quentin; providing for immediate medical isolation of class members from the CIM transferees prior to the transferees' introduction into

3

the San Quentin prison population; and implementing a reasonable COVID-19 medical infection prevention plan.

Based on these allegations, the complaint included a cause of action on behalf of the putative class against defendants for failure to summon medical care under section 845.6. The putative class is defined as all current and former San Quentin inmates who were diagnosed with COVID-19 at any time from May 28, 2020, through the final disposition of this action.[3]

**B. Procedural History**

The procedural history is derived from Malear's pleadings and the register of action, from which we take judicial notice of various filing dates in the proceedings below. (Evid. Code, § 452, subds. (d)(1), (h).)

On July 15, 2020, Malear presented a claim to defendants referencing the above allegations.

On July 27, 2020, Malear filed his original complaint in the superior court. The original complaint contained no allegations regarding Malear's compliance with the claim presentation requirements of the Act.

Two days later, on July 29, 2020, the Government Claims Program notified Malear of its rejection of his claim.

On October 23, 2020, Malear filed, as of right, a first amended complaint that was identical to the original complaint and included new allegations that Malear had now complied with the claim presentation requirements.

On November 3, 2020, Malear served defendants with the first amended complaint and a copy of the original complaint. The first amended

---

[3]     The complaint attached several exhibits, including an excerpt from a joint case management conference statement filed in another case setting forth "Defendants' Position," and media articles reporting on the outbreak of COVID-19 at San Quentin.

4

complaint was filed and served within six months after the rejection of Malear's claim. (See § 945.6, subd. (a)(1).)

On January 6, 2021, upon the parties' stipulation, Malear filed the operative complaint.

Defendants demurred to the first cause of action on the following grounds: (1) Malear's noncompliance with the claim presentation statutes; (2) Malear's failure to state facts sufficient to constitute a cause of action; and (3) defendants' statutory immunity from liability. Relying principally on *Lowry v. Port San Luis Harbor District* (2020) 56 Cal.App.5th 211 (*Lowry*), the trial court sustained the demurrer without leave to amend on the sole ground that Malear did not comply with the statutory claim presentation requirements.

Malear timely appealed from the ensuing judgment in favor of defendants.

## DISCUSSION

"In reviewing an order sustaining a demurrer without leave to amend, the appellate court decides de novo whether the complaint sets forth facts sufficient to state a cause of action. [Citation.] The court looks to the face of the complaint and treats the demurrer as admitting all the material facts alleged. [Citation.] However, the appellate court does not assume the truth of contentions, deductions, or conclusions of fact or law." (*Doheny Park Terrace Homeowners Assn., Inc. v. Truck Ins. Exchange* (2005) 132 Cal.App.4th 1076, 1085 (*Doheny Park*).)

### A. Government Claims Act

Section 905.2, subdivision (b) requires the presentation of "all claims for money or damages against the state" in all cases of "injury for which the state is liable." (§ 905.2, subd. (b)(3).) The State Board of Control must act

5

on a claim "within 45 days after the claim has been presented." (§§ 912.4, subd. (a), 912.8.) "If the board fails or refuses to act on a claim within" the 45-day period, "the claim shall be deemed to have been rejected by the board on the last day of the period within which the board was required to act upon the claim." (§ 912.4, subd. (c).)

"[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected." (§ 945.4.) If the public entity provides written notice of its rejection of a claim, any suit against the public entity must be brought no later than six months after the notice is personally delivered or deposited in the mail. (§ 945.6, subd. (a)(1).) If written notice is not given, the plaintiff has two years from accrual of the cause of action to file suit. (*Id.*, subd. (a)(2).)

Plaintiffs filing a complaint against a public entity "must allege facts demonstrating or excusing compliance with the claim presentation requirement. Otherwise, [their] complaint is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action." (*State of California v. Superior Court* (*Bodde*) (2004) 32 Cal.4th 1234, 1243 (*Bodde*).)

In *Lowry, supra*, 56 Cal.App.5th 211, the appellate court regarded the presentation and denial of a government claim as a statutory prerequisite to initiating suit. There, the plaintiff had filed a complaint against a harbor district on the same day that he applied for permission to present a late government claim under section 911.4. (*Lowry*, at pp. 215–216.) After his late claim was rejected, the plaintiff served the district with summons and complaint, and the district filed an answer asserting various affirmative defenses, including failure to comply with the Act. (*Id.* at p. 216.) The trial

6

court granted judgment on the pleadings, and the *Lowry* court affirmed, concluding the plaintiff "failed to comply with the Act because he filed a complaint before his claim was rejected." (*Id.* at p. 219.)

Here, the pleadings and judicially-noticed matters reflect that Malear commenced suit before his claim was actually or deemed rejected. However, "[a] party may amend its pleading once without leave of the court at any time before the answer, demurrer, or motion to strike is filed." (Code Civ. Proc., § 472, subd. (a).) "An 'amended' complaint supersedes all prior complaints" (*Lee v. Bank of America* (1994) 27 Cal.App.4th 197, 215), and "the original complaint ceases to have any effect either as a pleading or as a basis for judgment" (*State Compensation Ins. Fund v. Superior Court* (2010) 184 Cal.App.4th 1124, 1130–1131).[4] Consistent with these rules of civil practice, and unlike the situation in *Lowry*, Malear filed the first amended complaint alleging denial of his government claim before defendants appeared in the action. That amended complaint operated to supersede the prematurely-filed original complaint, which ceased to have any effect. On this record, we conclude Malear has demonstrated substantial compliance with the claim presentation requirement of the Act.

The weight of authority supports this conclusion. As *Lowry* recognized, the appellate courts of this state have long "found compliance with the Act even though complaints were filed prematurely." (*Lowry, supra*, 56 Cal.App.5th at pp. 219, 220–221, citing *Cory v. City of Huntington Beach* (1974) 43 Cal.App.3d 131 (*Cory*), *Savage v. State* (1970) 4 Cal.App.3d 793, 796, and *Taylor v. City of Los Angeles* (1960) 180 Cal.App.2d 255 (*Taylor*).)

---

[4]     These rules of civil practice apply here because the Government Claims Act does not provide otherwise. (See § 945.2.)

*Cory* is particularly instructive. There, the plaintiff presented a claim to the city and filed his complaint in court two days later, before the city had taken action on the claim. (*Cory, supra*, 43 Cal.App.3d at p. 133.) The city was not served with the complaint and summons until nearly eight months later. (*Ibid.*) On appeal, the summary judgment obtained by the city was reversed. Rejecting the city's reliance on cases requiring strict compliance with the Act, the *Cory* court explained: "[I]n assessing the formal adequacy of a claim, courts have applied a test of substantial compliance. [Citation.] Similarly, where the statutory purpose has been realized by other means, strict compliance has not been required." (*Id.* at p. 136.) *Cory* further noted that "the city could not have been prejudiced by the premature filing of the action since the complaint was not served until the [45-day] time period had run. Thus the defect had ceased to exist before the city was even formally notified that suit had been brought. [¶] To call the city's defense 'highly technical' would not be an overstatement. . . . 'At the time the answer of the city was filed, the city had received every benefit which a provision for rejection prior to suit is intended to serve.' " (*Ibid.*)

More recently, the Supreme Court reaffirmed that "a plaintiff need not allege strict compliance with the statutory claim presentation requirement." (*Bodde, supra*, 32 Cal.4th at p. 1245; see *California-American Water Co. v. Marina Coast Water Dist.* (2022) 86 Cal.App.5th 1272, 1286–1287.) The main question in *Bodde* was whether allegations demonstrating or excusing compliance with the Act must be pleaded in order to state a claim against a public entity. (*Bodde*, at p. 1237.) In answering this question in the affirmative, the court cited approvingly to the premature filing cases because they "actually enforced the claim presentation requirement and did not excuse the plaintiffs from alleging facts showing or excusing compliance."

8

(*Id.* at pp. 1244, 1243, citing *Radar v. Rogers* (1957) 49 Cal.2d 243, 246 (*Radar*), *Cory, supra,* 43 Cal.App.3d at p. 133, *Petersen v. City of Vallejo* (1968) 259 Cal.App.2d 757, 768, and *Taylor, supra,* 180 Cal.App.2d at p. 258.)

*Bodde* also reiterated that noncompliance with the claim presentation requirement "does not divest the trial court of subject matter jurisdiction over causes of action against public entities." (*Bodde, supra,* 32 Cal.4th at p. 1240, fn. 7.) Thus, the trial court here did not lack jurisdiction over the matter when Malear filed an amended complaint that superseded the prematurely-filed original complaint. (Cf. *ConnectU LLC v. Zuckerberg* (1st Cir. 2008) 522 F.3d 82, 91, 96 [dismissal of action based on original complaint's defective diversity jurisdiction theory reversed where, before defendants filed a responsive pleading, plaintiff filed amended complaint as of right that asserted federal question jurisdiction].) Just as in *Cory,* the prematurity defect "ceased to exist" once the amended complaint was filed, and because amendment occurred less than six months after Malear's claim was denied, defendants " 'received every benefit which a provision for rejection prior to suit is intended to serve.' " (*Cory, supra,* 43 Cal.App.3d at p. 136; cf. *Radar, supra,* 49 Cal.2d at p. 249 [finding substantial compliance with a Probate Code claims filing requirement where amended and supplemental complaint cured prematurity defect of original complaint].)

As defendants point out, the *Lowry* decision regarded *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983 (*DiCampli-Mintz*) as demonstrating the Supreme Court's rejection of *Cory* and other appellate decisions that approved or applied a substantial compliance test for cases involving prematurity defects. (*Lowry, supra,* 56 Cal.App.5th at p. 220.) We respectfully disagree with *Lowry*'s overly broad reading of *DiCampli-Mintz.* For the reasons discussed below, we conclude the substantial compliance

9

doctrine remains viable in the wake of *DiCampli-Mintz* under the limited circumstances presented in this case.

The statutory provision at issue in *DiCampli-Mintz* was section 915, subdivision (a) (915(a)), which identifies the individuals who may receive claims on behalf of a local public entity ("clerk, secretary, or auditor") as well as the acceptable methods of delivery (personal or mail delivery to said individuals "or to the governing body at its principal office"). Subdivision (e) of section 915 goes on to provide that a misdirected claim may be "deemed" compliant if it is "actually received by the clerk, secretary, auditor, or board of the local public entity." In *DiCampli-Mintz*, the plaintiff had allegedly been injured during a medical procedure at a county hospital, and she delivered her claim to an employee of a medical staffing office in the hospital's administration building. (*DiCampli-Mintz*, at p. 987.) The claim was never personally served on or mailed to the persons identified in section 915. (*Ibid*.) The Court of Appeal nevertheless held that the plaintiff substantially complied with the Act because, under *Jamison v. State of California* (1973) 31 Cal.App.3d 513, presentation of a claim to the wrong entity may be substantially compliant if the party served has a duty to notify the proper statutory agent. (*DiCampli-Mintz*, at pp. 989, 994–995.)

The Supreme Court reversed, concluding the appellate court "erred by failing to adhere to the plain language of section 915." (*DiCampli-Mintz*, *supra*, 55 Cal.4th at p. 992.) As the high court explained, it was "uncontested that the claim was never delivered or mailed to the 'clerk, secretary or auditor' as required by section 915(a). Likewise, the 'clerk, secretary, auditor or board' never actually received the claim. [Citation.] Thus, neither section 915(a)'s specific requirements for compliance, nor section 915(e)(1)'s provision

10

deeming actual receipt to constitute compliance, were satisfied." (*DiCampli-Mintz*, at pp. 991–992.)

In so concluding, *DiCampli-Mintz* rejected the *Jamison* rule as unsupported by any California decisional or statutory authority, repudiated by the same panel in a later decision, and in conflict with other authorities. (*DiCampli-Mintz*, *supra*, 55 Cal.4th at pp. 994–995, citing *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, *Life v. County of Los Angeles* (1991) 227 Cal.App.3d 894.) *DiCampli-Mintz* further criticized the *Jamison* rule as "creat[ing] uncertainty about how and where claims must be delivered," since misdirected claims could be received and forwarded to multiple people in different departments, "making it difficult to determine whether the claims were actually delivered to, or received by, a department or employee charged with the overall management of claims against the county." (*DiCampli-Mintz*, at p. 997.)

Fairly read, *DiCampli-Mintz* did not purport to abrogate the substantial compliance doctrine in all cases subject to the Government Claims Act. Rather, it rejected *Jamison*'s use of the doctrine to rewrite the "delivery provisions language of the statute" in a manner that was inconsistent with the statute's purpose and that threatened to "exponentially expand[]" the statute's scope and create uncertainty in the claim presentation process. (*DiCampli-Mintz*, *supra*, 55 Cal.4th at pp. 987, 996.)[5] Those concerns are absent here.

---

[5]    In quoting *DiCampli-Mintz* as "requir[ing] that claims 'satisfy the express . . . language of the statute' " (*Lowry*, *supra*, 56 Cal.App.5th at p. 220, citing *DiCampli-Mintz*, *supra*, 55 Cal.4th at p. 987), *Lowry* substituted ellipses for the words "delivery provisions," thereby expanding *DiCampli-Mintz* beyond the scope of its actual rationale and holding.

11

Defendants are correct that the filing of an amended complaint as of right after a claim is rejected is not the same as "bringing suit" after rejection under a strict reading of section 945.4's language. But the doctrine of substantial compliance, by its nature, does not require strict compliance. Rather, it excuses strict compliance " ' "when there has been 'actual compliance in respect to the substance essential to every reasonable objective of the statute.' " ' " (*Andrews v. Metro Transit Sys.* (2022) 74 Cal.App.5th 597, 607, italics omitted (*Andrews*).)

Here is such a case. To wit, the statutory objectives of section 945.4 are " 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation' " and to " 'enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future.' " (*City of Stockton*, *supra*, 42 Cal.4th at p. 738.) By itself, the premature commencement of a lawsuit against a public entity does not deprive the entity of its ability to consider a pending government claim, whether for immediate purposes or for fiscal and other types of planning. Nor does the mere filing of a premature complaint cause the public entity to incur litigation costs, as the various statutory deadlines for appearing in an action are triggered by service of the summons and complaint. (See Code Civ. Proc., §§ 412.20, subd. (a)(3) [time for responding to complaint], 430.40, subd. (a) [time for demurring], 435, subd. (b)(1) [time for moving to strike].)[6] Thus, for practical purposes, the lawsuit here did not begin in earnest until defendants were served with Malear's first amended complaint, at which point

---

[6]     Likewise, a civil plaintiff may not propound discovery until the defendant is served with summons or has appeared in the action. (Code Civ. Proc., §§ 2025.210, 2030.020, subd. (b), 2031.020, subd. (b), 2033.020, subd. (b).)

defendants' investigation and consideration of Malear's claim was already complete.

*Le Mere v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 237 does not aid defendants' position. There, the plaintiff sought to cure her failure to file a prelawsuit claim by filing a claim a year after commencing her lawsuit. (*Id.* at p. 247.) At that point, the court concluded, it was too late to " ' " 'provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation.' " ' " (*Ibid.*) Here, in contrast, nothing in the pleadings or judicially-noticed matters indicates that defendants incurred litigation expenses prior to the denial of Malear's prelawsuit claim.

Nor does application of the substantial compliance doctrine to the facts before us unduly " 'expand the rights of plaintiffs against governmental entities' " or otherwise frustrate the Act's intent " 'to confine potential governmental liability to rigidly delineated circumstances.' " (*DiCampli-Mintz, supra,* 55 Cal.4th at p. 991.) In this regard, defendants assert that Malear could have cured the prematurity defect by simply dismissing his original complaint and filing a new action. While that may be true, we find it appropriate to elevate substance over form where, as here, a plaintiff's substantial compliance with the claim presentation statute fulfills the essential statutory objectives. (See *Andrews, supra,* 74 Cal.App.5th at p. 607; *Cory, supra,* 43 Cal.App.3d at p. 136 [substantial compliance where public entity received every benefit of provision for rejection prior to suit].)

13

In concluding the circumstances in the present case are sufficient to demonstrate substantial compliance,[7] we emphasize our decision today is a narrow one that will not create uncertainty in the claim presentation process. To the contrary, we simply hold that when a lawsuit is prematurely filed before the actual or deemed denial of a government claim, application of the substantial compliance doctrine is generally appropriate if the original complaint is not served before an amended complaint alleging the requisite denial of a government claim is filed in compliance with Code of Civil Procedure section 472.

**B. Failure to Summon Medical Care**

Defendants contend the judgment should be affirmed on the alternative ground that Malear failed to allege facts sufficient to constitute a cause of action for failure to summon medical care. We conclude otherwise.

Section 845.6 provides in relevant part that public entities and public employees are not liable for injuries proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in custody, except "if the employee knows or has reason to know that the prisoner is in need of immediate medical care" and "fails to take reasonable action to summon such medical care." As such, the statute "confers a broad general immunity on the public entity" but provides for limited liability in "those situations where the public entity intentionally or unjustifiably fails to furnish immediate medical care." (*Watson v. State of California* (1993) 21 Cal.App.4th 836, 841 (*Watson*).)

---

[7]     In light of our conclusion, we need not address Malear's additional contentions that the trial court erred by applying *Lowry* retroactively and by not treating the first amended complaint as a " 'new action.' "

14

Assuming the truth of the material allegations in the complaint (*Doheny Park*, *supra*, 132 Cal.App.4th at p. 1085), we conclude Malear pleads facts sufficient to trigger liability under section 845.6. Liberally construed, the first cause of action establishes that defendants' employees knew or had reason to know at the time of the May 2020 transfer that San Quentin inmates were at immediate risk of contracting COVID-19 if no proper program of medical testing and quarantine was put in place. The employees unreasonably failed to summon medical care to provide for the immediate screening and/or testing of the CIM transferees and the immediate medical isolation of class members from the COVID-19-positive transferees (or vice versa) prior to the transferees' introduction into the San Quentin prison population. These failures resulted in the outbreak of COVID-19 at San Quentin, which was allegedly free of COVID-19 prior to the transfer, and proximately resulted in harm to Malear and the putative class members.

We acknowledge that these allegations, based on the unique and unprecedented circumstances described in the complaint, do not neatly align with the garden variety cases of public entity liability under section 845.6. Nevertheless, the alleged conduct comports with the language of section 845.6, and defendants cite no cases that invalidate Malear's theory of public entity liability as a matter of law. Accordingly, a general demurrer does not lie. (See, e.g., *Johnson v. County of Los Angeles* (1983) 143 Cal.App.3d 298, 316–317 [demurrer erroneously sustained where plaintiffs alleged that decedent's suicide was proximate result of county sheriffs' failure to summon medical care when they knew or had reason to know he had suicidal tendencies].)

In arguing to the contrary, defendants contend Malear fails to allege a " 'serious and obvious medical condition' " for purposes of stating a claim

under section 845.6 because he fails to allege that he was diagnosed with COVID-19 at the time of the May 2020 transfer. We note that although some courts have held that "[l]iability under section 845.6 is limited to serious and obvious medical conditions" requiring immediate care (*Watson, supra*, 21 Cal.App.4th at p. 841), such language is not found in the statute itself. In any event, we conclude the complaint sufficiently states facts that support the inference that COVID-19 is a "serious" (indeed fatal) infectious disease to some who contract it, and that the resulting need for immediate medical quarantine measures was "obvious" to all by May 2020. Liberally construed, these allegations fall within the scope of public entity liability under 845.6.

*Lucas v. City of Long Beach* (1976) 60 Cal.App.3d 341 does not compel a contrary conclusion. There, the court held that a city was not liable under section 845.6 for the wrongful death of a juvenile prisoner who committed suicide in his cell where the decedent's mother "offered no evidence as to what kind of medical care she claims should have been provided" and "how such medical care could have prevented the death." (*Lucas*, at p. 350.) Here, in contrast, Malear sufficiently identifies the type of medical care that he claims should have been immediately summoned (i.e., testing and isolation) and how such care would have prevented harm to the putative class.

Defendants further contend that public entities have no liability under section 845.6 for failing to properly diagnose and treat medical conditions such as COVID-19. (See *Watson, supra*, 21 Cal.App.4th at pp. 842–843 [no duty under section 845.6 to assure medical staff properly diagnosed and treated medical condition]; *Nelson v. State of California* (1982) 139 Cal.App.3d 72, 78 [no liability under section 845.6 for failure to prescribe correct medication].) But this argument ignores the gravamen of Malear's section 845.6 claim which, reasonably read, is not based on the negligent

16

provision of medical care, but on the failure to *summon* preventive medical care for inmates who were at immediate risk of COVID-19 infection due to the May 2020 inmate transfer.  Indeed, even if some portions of the complaint can be construed as alleging the negligent provision of medical care rather than a pure failure to summon care, "[a] demurrer does not lie to a portion of a cause of action" (*PH II, Inc. v. Superior Court* (1995) 33 Cal.App.4th 1680, 1682) and provides no basis for affirming the judgment here.

At oral argument, the deputy attorney general argued that Malear has already admitted, through his complaint and its exhibits, that the CIM inmates were tested before and after their arrival at San Quentin and were placed in a 14-day quarantine at San Quentin.  Based on these perceived admissions, the deputy attorney general contended that Malear is effectively challenging *how* preventive medical measures were carried out, which amounts to a medical malpractice claim falling outside the narrow exception to immunity under section 845.6.  (*Castaneda v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1070 [§ 845.6 narrowly authorizes claim against public entity for failure to summon medical care only, not for malpractice in providing that care].)

True, the complaint alleges that the CIM transferees were tested roughly two weeks before the transfer and that an unspecified number of transferees tested positive upon their arrival at San Quentin.  But as indicated, Malear's claim, reasonably construed, includes material allegations supporting a duty to summon testing of all transferees at the time of transfer, and, more importantly, a duty to isolate all transferees upon their arrival to San Quentin.  Contrary to the deputy attorney general's contention at oral argument, the exhibits attached to Malear's complaint are not reasonably viewed as expressing his admission that such preventive measures were

17

actually taken.  While facts appearing in exhibits to a complaint generally take precedence over contradictory factual pleadings (*Mead v. Sanwa Bank California* (1998) 61 Cal.App.4th 561, 567–568), here, the cited portions of the exhibits were clearly delineated as (1) litigation statements made by defendants in a court filing, and (2) statements by prison officials to the media regarding their version of the events.  We decline to construe Malear's attachment of these exhibits as an admission or adoption of the facts gleaned from the adversarial statements of defendants and their agents about the main facts in contention in this case.

We reiterate that this case presents a novel theory of public entity liability under section 845.6, and we do not speculate on the merits of Malear's action, which will turn on further development of factual matters beyond the scope of the pleadings.  For now, we are bound to liberally construe and assume the truth of the allegations of the complaint, and on that basis conclude that Malear has stated facts sufficient to constitute a cause of action against defendants.[8]

---

[8]    At the tail end of oral argument, Malear's counsel took a position that appeared at odds with the allegations of the complaint.  Specifically, counsel stated this case centers on employee decision-making leading up to the transfer and does not concern what happened or did not happen after the transfer.  On review of a demurrer ruling, however, we must focus on the allegations of the complaint.  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)  Accordingly, for purposes of this appeal, we will not construe counsel's remarks as altering the factual basis of Malear's well-pleaded cause of action, as statements of counsel during argument generally are not binding on the client unless made in the form of a stipulation.  (*Haynes v. Hunt* (1962) 208 Cal.App.2d 331, 335.)  Nonetheless, in view of counsel's remarks, a further amendment to clarify the precise nature of the failure to summon claim would likely be of assistance to the parties and the trial court going forward.  (See Code Civ. Proc. 473, subd. (a)(1) [court may, after notice to adverse party, allow amendment to any pleading in furtherance of justice and upon any terms as may be just]; *Nestle v. Santa*

## C. Statutory Immunities

Defendants contend they are immune from liability under various statutes, namely, the California Emergency Services Act (ESA) (§ 8550 et seq.), section 8658, and section 855.4. We conclude a demurrer does not lie on this basis because the claimed statutory immunities are not evident from the face of the pleadings or judicially-noticed matters.

ESA provides, among other things, for the conferral of emergency powers on the Governor and on the chief executives and governing bodies of political subdivisions of the state "to provide for state assistance in the organization and maintenance of the emergency programs of such political subdivisions." (§ 8550, subd. (a).) ESA's purpose "is self-explanatory. In situations in which the state must take steps necessary to quell an emergency, it must be able to act with speed and confidence, unhampered by fear of tort liability." (*Thousand Trails, Inc. v. California Reclamation Dist. No. 17* (2004) 124 Cal.App.4th 450, 458.)

ESA's immunity provision is located in section 8655, which provides that "[t]he state or its political subdivisions shall not be liable for any claim based upon the exercise or performance, or the failure to exercise or perform, a discretionary function or duty on the part of a state or local agency . . . in carrying out the provisions of [ESA]." The immunity under section 8655 is broad, as it "covers not only the exercise of discretion, but also the 'performance, or the failure to . . . perform, a discretionary function' in carrying out the provisions of [ESA]." (*Soto v. State of California* (1997) 56 Cal.App.4th 196, 200–201.)

*Monica* (1972) 6 Cal.3d 920, 939 [strong policy in favor of liberal allowance of amendments].)

19

Here, Malear's complaint does not explicitly base defendants' liability on their performance or failure to perform a discretionary function "in carrying out the provisions of" ESA. (§ 8655.) Notably, there is no indication on the face of the pleadings or in judicially-noticed documents that defendants were acting pursuant to ESA in transferring CIM inmates to San Quentin. In any event, the exercise of the state's police powers under ESA "must be reasonable and proper under the circumstances." (*Adkins v. State of California* (1996) 50 Cal.App.4th 1802, 1816, disapproved on other grounds in *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1148.) For the reasons discussed, we conclude Malear alleges facts that, if true, could support the conclusion that defendants' employees failed to take reasonable actions related to the CIM transfer. Accordingly, it is not appropriate at the pleading stage to determine whether immunity under section 8655 applies as a matter of law.

Defendants also rely on the immunity provided in section 8658, which states: "In any case in which an emergency endangering the lives of inmates of a state . . . penal or correctional institution has occurred or is imminent, the person in charge of the institution may remove the inmates from the institution. . . . Such person shall not be held liable, civilly or criminally, for acts performed pursuant to this section." Defendants contend this immunity for persons in charge of penal or correctional institutions applies to them via section 815.2, subdivision (b), which provides that "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Again, there are no facts on the face of the pleadings or in judicially-noticed documents indicating the applicability of this immunity by its terms. Malear does not allege that persons in charge of CIM or San Quentin were

responsible for the alleged conduct at issue. Accordingly, the existence of immunity under sections 8658 and 815.2, subdivision (b), cannot be resolved on demurrer.

Finally, defendants invoke subdivision (a) of section 855.4, which provides that "a public entity . . . is [not] liable for an injury resulting from the decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community if the decision whether the act was or was not to be performed was the result of [an] exercise of discretion . . . whether or not such discretion be abused." Subdivision (b) of section 855.4 further provides that "[n]either a public entity nor a public employee is liable for an injury caused by an act or omission in carrying out with due care a decision described in subdivision (a)."

Once again, the existence of immunity under this statute is not apparent from the face of the pleadings or in judicially-noticed documents. Malear does not purport to base defendants' liability on their discretionary decisions to perform or not to perform an act to promote the public health of the community by preventing the communication of disease. Reasonably construed, Malear's claim arises instead from the alleged failure of defendants' employees to summon medical care once they knew or had reason to know that San Quentin inmates were at immediate risk of contracting COVID-19 upon the arrival of the CIM transferees. Defendants cite no authority extending the immunity of section 855.4 to public health decisions affecting a single prison as distinct from the "community." Finally, even assuming the decision to transfer CIM inmates to San Quentin was a discretionary act to promote the public health of the community within the meaning of section 855.4, subdivision (a), the gravamen of the claim against

21

defendants appears to center on the manner in which their employees *carried out* this decision.  Under section 855.4, subdivision (b), the immunity applies to acts or omissions "carr[ied] out with due care," and for the reasons discussed, Malear sufficiently alleges that defendants' employees failed to take reasonable care in making decisions related to the May 2020 transfer.

For all of these reasons, we conclude the demurrer to the first cause of action should have been overruled.

## DISPOSITION

The judgment is reversed.  Malear is entitled to his costs on appeal.


FUJISAKI, J.


WE CONCUR:


TUCHER, P.J.


PETROU, J.

22

Trial Court:        Marin County Superior Court

Trial Judge:        Hon. James T. Chou

Counsel:            Hersh & Hersh, Charles C. Kelly, II; Law Office of
                    Matthew D. Carlson, Matthew D. Carlson; Pier 5 Law
                    Offices, Ben Rosenfeld and Tyler R. Smith, for Plaintiff
                    and Appellant

                    Rob Bonta, Attorney General, Monica N. Anderson, Senior
                    Assistant Attorney General, Jeffrey T. Fisher,
                    Supervising Deputy Attorney General, and Cassandra J.
                    Shryock, Deputy Attorney General for Defendants and
                    Respondents

*Malear v. State of California* (A163146)